Tom MATIS and Gary Sorenson,
Appellants,

v.

Mark GOLDEN, Brian Kosoglow and
Jonathan Deming, Appellees.

No. 10–05–00311–CV.

Court of Appeals of Texas,
Waco.

May 16, 2007.

J. Paul Nelson, Henderson, for appellants.

Bill Youngkin, E.V. Adams, Bryan, for appellees.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

### OPINION

FELIPE REYNA, Justice.

Mark Golden, Brian Kosoglow, and Jonathan Deming recovered a judgment against Tom Matis and Gary Sorensen for fraud. Matis and Sorensen appeal on the following grounds: (1) the court erred by denying Matis's special appearance; and (2) the evidence is legally and factually insufficient to support the court's judgment. We affirm.

### JURISDICTION

■ In point one, Matis contends that the court erred by denying his special appearance. The court signed the order denying Matis's special appearance on June 27, 2003. Matis did not file a notice of appeal until August 2005. An appeal of an order granting or denying a special appearance is an interlocutory appeal which must be perfected by filing a notice of appeal within twenty days after the ruling. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2006); *see also* TEX.R.APP. P. 26.1(b); *In re K.A.F.*, 160 S.W.3d 923, 927 (Tex.2005); *Denton County v. Huther*, 43 S.W.3d 665, 666–67 (Tex.App.-Fort Worth 2001, no pet.). Matis's attempted appeal from the denial of his special appearance is untimely, and we do not have jurisdiction to address it. Accordingly, we dismiss Matis's first point for want of jurisdiction. *See In re S.R.O.*, 143 S.W.3d 237, 248 (Tex.App.-Waco 2004, no pet.).

### LEGAL AND FACTUAL SUFFICIENCY

In point two, Matis and Sorensen challenge the legal and factual sufficiency of the evidence to support the court's finding that they committed fraud.

■ A legal sufficiency challenge requires consideration of "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* This standard also applies to a court's findings made in a bench trial. *See Bank of Am. v. Hubler*, 211 S.W.3d 859, 862 (Tex.App.–Waco 2006, pet. granted, judgm't vacated w.r.m.); *see also Ludwig v. Encore Med., L.P.*, 191 S.W.3d 285, 294 (Tex.App.-Austin 2006, pet. denied); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

■ A factual sufficiency challenge to issues on which the appellant did not bear the burden of proof requires us to "consider and weigh all of the evidence." *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 633 (Tex.App.-Waco 2000, pet. denied). We will reverse the "verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust." *Id.* On issues where the appellant "bears the burden of proof," we will reverse only if, "considering all the evidence, the finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust." *Id.*

■ A fraud claim is comprised of the following elements:

(1) a material representation was made;

(2) the representation was false; (3)

when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 211 n. 45 (Tex.2002) (quoting *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 758 (Tex.2001) (orig. proceeding)); *Long v. Tanner,* 170 S.W.3d 752, 754 (Tex. App.-Waco 2005, pet. denied).

In support of their legal and factual sufficiency challenges, Matis and Sorensen argue that: (1) Golden and Deming cannot recover for fraud because they learned of the investment through Kosoglow and neither appeared nor testified at trial; and (2) the evidence does not support a finding of materiality, falsity and/or recklessness, fraudulent intent, or reliance.

### Failure to Appear and Testify

■ According to the record, Matis first learned of the investment through his friend Ron Weaver. The investment involved a company known as Waste Tech. Information regarding the investment then initially passed from Matis to Sorensen, from Sorensen to Kosoglow, and from Kosoglow to Golden and Deming. The specific information conveyed was that the investment would yield monthly returns or invested funds would be refunded. Kosoglow, Golden, and Deming each invested $25,000 in the investment. Invested funds were wired to the Emerald Noble Holding Trust and eventually transferred to Donald Richards, a California attorney responsible for preparing the investment documents. However, at no time did Ko-

soglow, Golden, and Deming receive any returns or refunds. Only Kosoglow provided live testimony at trial.[1] Because Golden and Deming were out of state and unable to appear and testify at trial, Matis and Sorensen contend that Golden and Deming cannot recover for fraud.

■ The Texas Supreme Court has specifically considered whether fraud requires a "direct relationship between the alleged fraudfeasor and a specific known person— commonly referred to in this context as 'privity,'" and determined that such privity is not required. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 574, 580 (Tex.2001). Fraud "exists where the false representation was made with the intent of reaching and deceiving a third person and thereby caused that third party injury; privity is not required between the fraudfeasor and the person he is trying to influence." *In re Enron Corp. Sec.,* 388 F.Supp.2d 780, 784 (S.D.Tex.2005) (citing *Ernst & Young,* 51 S.W.3d at 578–80). Accordingly, it is immaterial that a direct relationship does not exist between Golden, Deming, Matis, and Sorenson. *See id.; see also Ernst & Young,* 51 S.W.3d at 578–80.

■ Furthermore, it makes sense that Golden and Deming could rely on Kosoglow's testimony as circumstantial evidence supporting their own fraud claims. "Fraud is usually not discernible by direct evidence and is usually so covert or attendant with such attempts at concealment as to be incapable of proof other than by circumstantial evidence." *Cotten v. Weatherford Bancshares, Inc.,* 187 S.W.3d 687, 707 (Tex.App.-Fort Worth 2006, pet. denied). Kosoglow could properly testify to Matis's and Sorensen's representations. *See* Tex.R. Evid. 801(e)(2). He could also

---

1. The court sustained Matis's and Sorensen's objection to Kosoglow's testimony regarding whether Golden and Deming relied on Matis's and Sorensen's representations.

testify to the facts of the case. Additionally, Golden's deposition testimony was admitted at trial and the record contains documentary evidence pertaining to Golden and Deming's claims. Therefore, we cannot agree that Golden and Deming are not entitled to recover by virtue of being unable to appear and testify at trial.

## Materiality

 Actionable representations must involve material facts, not mere opinion or puffery. *See Prudential Ins. Co. of Am. v. Jefferson Assocs.,* 896 S.W.2d 156, 163 (Tex.1995). "A representation is 'material' if it is important to the party to whom it is made in making a decision regarding the particular transaction." *Burleson State Bank v. Plunkett,* 27 S.W.3d 605, 613 (Tex.App.-Waco 2000, pet. denied). " 'Material means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question.' " *Id.* (quoting *Beneficial Pers. Servs. v. Porras,* 927 S.W.2d 177, 186 (Tex.App.-El Paso 1996, writ granted, judgm't vacated w.r.m.)).

 "Whether a statement is an actionable statement of 'fact' or merely one of 'opinion' often depends on the circumstances in which a statement is made." *Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269, 276 (Tex.1995). Relevant circumstances include "the statement's specificity, the speaker's knowledge, the comparative levels of the speaker's and the hearer's knowledge, and whether the statement relates to the present or the future." *Id.* Even an opinion may be actionable if: (1) it is "intertwined" with "direct representations of present facts;" (2) "the speaker has knowledge of its falsity;" (3) it is "based on past or present facts;" or (4) the speaker has "special knowledge of facts that will occur or exist

in the future." *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930–31 (Tex.1983). "When a speaker purports to have special knowledge of the facts, or does have superior knowledge of the facts—for example, when the facts underlying the opinion are not equally available to both parties—a party may maintain a fraud action." *Paull v. Capital Res. Mgmt., Inc.,* 987 S.W.2d 214, 219 (Tex.App.-Austin 1999, pet. denied).

 It appears from the record that Matis and Sorensen specifically represented that (1) invested funds were refundable; and (2) returns would be paid monthly, beginning shortly after the initial investment, and amount to one hundred percent for ten months. There is no doubt, given that no returns or refunds have been realized, that these representations were false. Yet, Matis and Sorensen contend that they were merely relaying information and that these representations are mere statements of opinion. We disagree.

These are not the type of representations that generally amount to mere puffery or opinion. *See Paull,* 987 S.W.2d at 218–19 (statements that an investment was "low risk" and would "produce large revenues for a long time" are merely " 'puffing,' or 'dealers' talk"); *see also Faircloth,* 898 S.W.2d at 276 (representing a settlement as "top dollar" is mere opinion); *Prudential,* 896 S.W.2d at 163 ("superb," "super fine," and "one of the finest little properties in the City of Austin" are not actionable statements). Nor were they presented as predictions or results contingent on the happening of some other event. These were specific statements of material fact regarding the existing terms of the investment. *See Faircloth,* 898 S.W.2d at 276.

Moreover, the record indicates that Matis and Sorensen were not merely relaying information, but their representations were made with special knowledge. Al-

though Sorensen testified to acting solely as a liaison, Kosoglow, Golden, and Deming were dependent on Matis and Sorenson for information regarding the investment. Kosoglow testified that Matis and Sorensen appeared well informed and provided considerable detail about the investment, including its inner workings, what happened to the invested funds and where they were transferred, and the manner in which returns would be received. Matis and Sorensen pointed Kosoglow, Golden, and Deming in the direction of a specific financial institution where they could open an account for receiving returns. When the investment yielded no returns, Matis and Sorensen explained that all the required funding had not been received in order to make the initial trade. They then informed Kosoglow, Golden, and Deming of a second available trade.

According to Sorensen, all information came from those higher up the chain of command. However, Matis and Sorensen had access to these individuals. One such person, Ron Weaver, communicated with both Matis and Sorensen. Weaver and Sorensen testified that Matis was involved in raising the financing to move the investment forward. Weaver knew that Matis was contacting potential investors, including Kosoglow, Golden, and Deming. When Matis and Sorensen referred Kosoglow, Golden, and Deming to Weaver, Weaver instructed them to communicate with Matis and Sorensen alone so as not to "jeopardize the trade." Weaver confirmed what Matis and Sorensen had previously explained.

Kosoglow testified that he had never previously invested and knew nothing about the investment other than information provided by Matis and Sorensen. In fact, Matis and Sorensen knew Kosoglow, Golden, and Deming were interested in the investment. The information Matis and Sorensen provided was in response to this interest. Following the initial investment, Matis and Sorensen continued providing information. The record contains several emails from Sorensen whereby he and Matis provided status reports and presented ideas for obtaining refunds. At one point, Sorensen responded to questions lodged by Deming's father. Matis and Sorensen also met with Weaver via telephone to discuss potential ways to obtain refunds, some of which involved Matis's and Sorensen's participation. Accordingly, the record reflects that Matis and Sorensen were not merely relaying information, but possessed access to unique information regarding the investment process to which Kosoglow, Golden and Deming did not have equal access. *See Paull,* 987 S.W.2d at 219. In such a case, even if Matis's and Sorensen's representations amounted to mere opinions, they are actionable. *See id.*

Furthermore, Kosoglow testified that the profitable returns made him want to invest and that he probably would not have invested absent the representations. He and Golden both testified to investing based on these representations and that being able to obtain a refund was an important factor influencing the decision to invest. *See Plunkett,* 27 S.W.3d at 613. Wire transfers contained in the record indicate that all three men contributed substantial sums of their own money to the investment. Any reasonable person would attach importance to representations that an investment would produce monetary results, with no apparent financial loss, and would likely formulate a decision based on these representations.

In light of the evidence contained in the record, the court could reasonably conclude that Matis and Sorensen made actionable material representations of fact to Kosoglow, Golden, and Deming regarding

the terms of the investment. *See City of Keller,* 168 S.W.3d at 827.

### Falsity and/or Recklessness

 "A statement is not fraudulent unless the speaker knew it was false when made or the speaker made it recklessly without knowledge of its truth." *Plunkett,* 27 S.W.3d at 613 (citing *Prudential,* 896 S.W.2d at 163). Representations are also reckless if made without "sufficient information or basis to support them." *Trenholm,* 646 S.W.2d at 933. "An unqualified statement that a fact exists, made for the purpose of inducing another to act upon it, implies that the one who makes it knows it to be true and speaks from such knowledge." *Baber v. Pioneer Concrete,* 919 S.W.2d 664, 667 (Tex.App.-Fort Worth 1995, writ dism'd). "If the facts represented do not exist, and the person states of his own knowledge that they do, and induces another to act upon his statement, the law imputes to him a fraudulent purpose." *Id.* Recklessness may be proved by "direct or circumstantial evidence." *Plunkett,* 27 S.W.3d at 613.

 Although Matis also invested, he received no returns or refunds. He testified that he believed the investment would take place as represented and would not have invested had he known that there would be no returns or that his money would not be refunded. He also testified that, in hindsight, he "probably would have been a little bit more cautious." While Matis's and Sorensen's representations were not necessarily made with knowledge of their falsity, the record does contain evidence that their representations were at least made recklessly.

According to the record, Matis and Sorensen did not personally guarantee any money and there were no written guarantees in place at the time the representations were made. Matis, Sorensen, and Weaver all testified that someone named Alice Brooks had verbally indicated that she would guarantee the money. At no time were any guarantees placed in writing. Moreover, wiring money was not the only prerequisite for receiving returns. A total amount of money had to be collected in order for the investment to move forward and produce returns.

The record is unclear as to whether, at the time the representations were made, Matis and Sorensen were aware that making the trade and receiving returns was contingent on obtaining all required funding. They may also have been unaware that there were no written guarantees or that any such guarantees were uncertain. In either case, they apparently left the impression that they possessed personal knowledge of the details of the investment and that the facts as represented were true. *See Baber,* 919 S.W.2d at 667. It appears that Matis and Sorensen possessed insufficient information on which to base their representations. *See Trenholm,* 646 S.W.2d at 933. The court could reasonably conclude that they did not understand the investment's process and therefore acted recklessly by misinforming Kosoglow, Golden, and Deming regarding the investment's terms. *See Plunkett,* 27 S.W.3d at 613.

Matis and Sorensen argue that this result imposes upon them a duty to investigate the investment prior to making any representations. They contend that investments "involve a certain degree of risk;" thus, "any college graduate, such as the Appellees were shown to be, would know this and should have known that an expected rate of return in excess of 1200 per cent per year would involve a high degree of risk." However, because Matis's and Sorensen's positive representations negated any perceived "degree of risk," we cannot say that Kosoglow, Golden, and

Deming were in possession of any facts that would have led them to question the representations made. Moreover, whether Matis and Sorensen possessed a duty to investigate is not the proper inquiry. The issue is whether a representation is made falsely or recklessly. *See Plunkett,* 27 S.W.3d at 613; *see also Prudential,* 896 S.W.2d at 163. The record contains evidence supporting the court's finding that Matis's and Sorensen's representations were made recklessly without any knowledge of their truth. *See City of Keller,* 168 S.W.3d at 827.

## Intent

■■■■ A representation must be intended to "induce action." *Plunkett,* 27 S.W.3d at 613. Intent "is determined at the time the party made the representation" and "may also be inferred from subsequent acts." *Id.* "Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex.1986).

■■■ Although the representations regarding the investment never developed, Matis and Sorensen contend that their subsequent failure to perform cannot establish intent. It is correct that "failure to perform, *standing alone,* cannot establish fraudulent intent." *Columbia/HCA Healthcare Corp. v. Cottey,* 72 S.W.3d 735, 745 (Tex.App.-Waco 2002, no pet.) (emphasis added); *see Spoljaric,* 708 S.W.2d at 435. However, "slight circumstantial evidence of fraud, when considered with the breach of a promise to perform, is sufficient to support a finding of fraudulent intent." *Cottey,* 72 S.W.3d at 745; *see Spoljaric,* 708 S.W.2d at 435.

■■■ Matis and Sorensen also place some emphasis on the fact that they de-rived no benefit from the transaction. They contend that they "had no control over the investment and had no relationship with the company or principles thereof." However, " 'all who participate are liable for the fraud, ... irrespective of proof that they shared in the profits, for the gravamen of the action is injury to plaintiff and not benefit to defendant.' " *Corpus Christi Area Teachers Credit Union v. Hernandez,* 814 S.W.2d 195, 198 (Tex.App.-San Antonio 1991, no writ) (quoting *Crisp v. Southwest Bancshares Leasing Co.,* 586 S.W.2d 610, 615 (Tex.Civ. App.-Amarillo 1979, writ ref'd n.r.e.)) (emphasis added); *see Crawford v. Ancira,* No. 04–96–00078–CV, 1997 Tex.App. Lexis 2263, at *8, 1997 WL 214835, at *3 (Tex. App.-San Antonio April 30, 1997, no pet.) (not designated for publication). A plaintiff need not prove that the defendant derived a benefit in order to maintain a fraud claim. *See Crawford,* 1997 Tex.App. Lexis 2263, at *8–9, 1997 WL 214835, at *3.

Given Matis's involvement in raising financing to move the investment forward, it is doubtful that he had any other intent but that Kosoglow, Golden, and Deming invest. The record is not entirely clear as to whether Sorensen directly assisted in these efforts, although he testified that he and Matis had discussed ways to raise funds for certain business ventures. Nevertheless, Sorensen at least participated in obtaining Kosoglow, Golden, and Deming's investment. He and Matis told Kosoglow, Golden, and Deming that funds must be invested by a certain date in order to join the investment. Sorensen admitted that this is often a tactic of scams. When the investment yielded no returns, Matis and Sorensen did not act expeditiously to obtain refunds. It appears they attempted to stall, offering multiple reasons why the investment yielded no returns and making proposals for obtaining refunds, none of

which ever developed. Almost in an effort to persuade Kosoglow, Golden, and Deming to remain in the investment, Matis and Sorensen continuously asserted that the investment would generate results and questioned why Kosoglow, Golden, and Deming wanted a refund when the investment was about to produce. In light of Matis's and Sorensen's prior and subsequent actions, the record contains evidence of intent.

The trial court could have inferred that Matis's and Sorensen's representations were made with the intent to induce Kosoglow, Golden, and Deming to invest. *See Spoljaric,* 708 S.W.2d at 434; *see also Plunkett,* 27 S.W.3d at 613; *City of Keller,* 168 S.W.3d at 827.

### Reliance

 A plaintiff must "demonstrate that he relied upon the fraudulent misrepresentation to his detriment." *Plunkett,* 27 S.W.3d at 614; *see Ernst & Young,* 51 S.W.3d at 577. Reliance is established by showing that the defendant's actions and representations induced the plaintiff "to act or to refrain from action." *Ernst & Young,* 51 S.W.3d at 577.

 Prior to investing, Kosoglow, Golden, and Deming spoke with Weaver. Matis and Sorensen contend this conversation amounts to conducting an investigation. Actual knowledge of false representations is "inconsistent with the claim that the allegedly defrauded party has been deceived, and it negatives the essential element of reliance upon the truth of the representations." *Koral Indus. v. Sec.-Connecticut Life Ins. Co.,* 788 S.W.2d 136, 146 (Tex.App.-Dallas 1990, writ denied); *Mayes v. Stewart,* 11 S.W.3d 440, 451 (Tex.

App.-Houston [14th Dist.] 2000, pet. denied).

It is not the rule that a person injured by the fraudulent and false representations of another is held to the exercise of diligence to suspect and discover the falsity of such statements. In the absence of knowledge to the contrary, he would have a right to rely and act upon such statements, and certainly the wrongdoer in such a case cannot be heard to complain that the other should have disbelieved his solemn statements.

*Koral Indus. v. Sec.-Connecticut Life Ins. Co.,* 802 S.W.2d 650, 651 (Tex.1990) [2] (quoting *W. Cottage Piano & Organ Co. v. Anderson,* 45 Tex.Civ.App. 513, 101 S.W. 1061, 1064 (Tex.Civ.App.-Fort Worth 1907, writ denied)).

Assuming without deciding that this conversation amounts to undertaking an investigation, there is no indication that Kosoglow, Golden, and Deming were placed on notice of the falsity of any representations. *See Koral,* 788 S.W.2d at 146; *see also Mayes,* 11 S.W.3d at 451. Weaver merely repeated the information previously conveyed by Matis and Sorensen. There is no evidence in the record suggesting that the conversation Kosoglow, Golden, and Deming had with Weaver gave any indication that Matis's and Sorensen's representations were false. Absent such actual knowledge, Kosoglow, Golden, and Deming were entitled to rely on Matis's and Sorensen's representations and were not required to "suspect and discover" any falsities. *Koral,* 802 S.W.2d at 651.

Moreover, the record establishes that these representations caused Kosoglow, Golden, and Deming to invest. Kosoglow testified that these representations were important to his decision, he relied on these representations, and he would not

---

**2.** This is the Supreme Court's per curiam opinion denying writ in *Koral Indus. v. Securi-* *ty–Connecticut Life Ins. Co.,* 788 S.W.2d 136, 146 (Tex.App.-Dallas 1990, writ denied).

have invested but for these representations. Golden also testified to relying on these representations. Kosoglow, Golden, and Deming each wired $25,000 to the required location in order to join the project. It is doubtful that this decision was in no way influenced by the possibility of receiving substantial returns and the assurance of obtaining a refund should the investment fail. Accordingly, the record contains evidence supporting a finding of reliance. *See Plunkett,* 27 S.W.3d at 614; *see also Ernst & Young,* 51 S.W.3d at 577; *City of Keller,* 168 S.W.3d at 827.

In summary, there is evidence in the record whereby the court could reasonably conclude that Matis and Sorensen committed fraud. *See City of Keller,* 168 S.W.3d at 827. The judgment is not "so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust." *Checker Bag,* 27 S.W.3d at 633. Because the evidence is legally and factually sufficient to support the trial court's findings, we overrule point of error number two.

The judgment is affirmed.

Chief Justice GRAY concurring.

TOM GRAY, Chief Justice concurring.

I cannot let the importance of the dismissal of the first issue go in the understated manner of the majority opinion. The importance of that holding is that if a 120a special appearance motion is denied, the exclusive remedy is by an immediate accelerated appeal of the interlocutory order under Texas Civil Practice and Remedies Code section 51.014(a)(7). TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2006). That holding means the losing party cannot wait until the end of the proceeding and then appeal the denial of the special appearance, but must instead comply with the requisites of timely filing a notice of appeal for the accelerated appeal. *See* TEX.R.APP. P. 26.1(b), 28.1.