**Reversed and Rendered in part, and Affirmed in part, Opinion Filed September 17, 2013**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

---

**No. 05-11-00617-CV**

---

**K.A.WEST, LLC & DANNY KATAVE, Appellant**
**V.**
**GK INVESTMENTS, INC., MICHAEL BAREKET, ET AL, Appellee**

---

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 06-08847**

---

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Richter[1]
Opinion by Justice Bridges

Appellant Danny Katave[2] appeals from a judgment entered in favor of the Outside Investors (appellees) in the amount of $466,226, plus interest and attorney's fees. In four issues, Katave argues the trial court erred in entering judgment against him when: (1) the parties did not stipulate as to the measure of damages to be used as to the fraud claim or stipulate that the trial court decide; (2) the evidence was legally and factually insufficient to support the jury's findings against him on fraud; (3) the Outside Investors did not testify at trial; and (4) the trial court entered judgment against him for attorney's fees based upon the jury's verdict of fraud. We affirm in part, and reverse in part.

---

[1] The Hon. Martin Richter, Justice, Assigned

[2] Although both Katave and K.A. West filed a notice of appeal, only Katave appeals the judgment against him.

**Background**

Appellant Katave is the manager of K.A. West. Katave and his cousin, Juda Katav, and Avi Goldberg are referred to as the "Promotion Group." The Promotion Group wished to propose real estate ventures to prospective investors, and eventually formed Economy Business Park, Ltd. ("Partnership") with the Outside Investors. The Partnership was formed to purchase, own, manage and sell a piece of commercial real estate. The Outside Investors, all residents of the State of Israel, are nine of the limited partners in the Partnership. K.A. West is the general partner of the Partnership.

Prior to the formation of the Partnership, Katave and the Outside Investors met in Israel to discuss the potential real estate venture. The primary matter left unresolved at that first meeting was the percentage, referred to as a "success fee," to be paid Katave when the property sold, or was refinanced, and certain cumulative returns were achieved. Following the meeting, Goldberg prepared a document, written in Hebrew, styled "Clarification Agreement." The Clarification Agreement was distributed to the potential parties to the transaction. Goldberg testified the Clarification Agreement was what he understood the Promotion Group was willing to agree to.

All negotiations were conducted in Israel and spoken in Hebrew. The Outside Investors requested the negotiated terms be reduced to writing in Hebrew. Ofer Bartal, one of the Outside Investors, testified, "we didn't want a very complicated contract in English," but wanted "the Hebrew version of the agreement [to] rule." Katave informed the Outside Investors that they must have a written partnership agreement that conformed to Texas law, and the bank financing a portion of the property purchase required a copy of the fully executed and final partnership agreement. Bartal explained the Outside Investors "all wanted to be sure that the Partnership Agreement in English will say exactly what we agreed upon in the Hebrew language."

The Promotion Group, except for Katave, met again with the Outside Investors. Although he was not present at the second meeting, the Promotion Group indicated they represented Katave as well. Further negotiations regarding the success fee took place. At the second meeting, the parties agreed to a success fee of an additional 10% of all amounts by which the sale or refinancing proceeds exceeded a 22% annual return.

Goldberg then reduced the terms agreed upon at that second meeting into a Hebrew document ("Hebrew Agreement"). Goldberg testified that, during this time, he was in almost daily contact with Katave. He stated he told Katave the investors had agreed to a sale or refinance success fee of 10% for Katave, which was reflected in the Hebrew Agreement. Goldberg testified the Hebrew Agreement contained the terms agreed to by both the Promotion Group and the Outside Investors. Goldberg further stated he expected the English language partnership agreement ("English Agreement") to contain provisions identical to the Hebrew Agreement. By October 2001, Katave told Goldberg he needed the Outside Investors' signature pages for the English Agreement, so the bank would finance the transaction. The English Agreement was not produced to Goldberg until after the property had been purchased.

On October 15, 2001, Katave's assistant faxed the English Agreement to the title company. The English Agreement that contained the fax signature pages of the Outside Investors provided for a success fee of 20% to K.A. West, the general partner, as well as 64% of the remaining 80% to Katave Family L.P., an entity owned by Katave. The purchase of the property closed on October 17, 2001.

In 2005, the Partnership refinanced its debt, borrowing $487,736.63. In the spring of 2006, the Partnership sold the property at issue for $7.23 million. After the property sold, Goldberg met with Katave and his accountant. Goldberg testified Katave then presented him with a chart of distributions that varied from what Goldberg expected. Katave stated it was

based on the English Agreement, but Goldberg insisted the Hebrew Agreement was the controlling agreement.

On August 21, 2006, the Outside Investors made demand on Katave for proper payment. K.A. West and Katave commenced the underlying suit as a declaratory judgment action against the limited partners of the Partnership, seeking a declaration that the proceeds from the Partnership had been appropriately and correctly distributed to the Outside Investors in accordance with the terms of the Partnership Agreement. The Outside Investors counterclaimed against Katave for fraud and against K.A. West for breach of fiduciary duty and other business torts. In the underlying case, Katave contended the Partnership was governed by the English Agreement, whereas the Outside Investors contended the Partnership was governed by the Hebrew Agreement.

On May 22, 2009, Katave nonsuited his claim for declaratory relief. The parties agreed to try liability issues to a jury. The parties also agreed to try the remaining issues—the manner in which to calculate distributions and attorney's fees—to the trial court. The parties stipulated that, if the jury's answers to liability questions favored the Outside Investors, the parties would try the proper way to calculate the distribution under the terms of the Hebrew Agreement, as well as issues relating to the award of attorney's fees, to the trial court. The jury found Katave committed fraud against the Outside Investors. The jury also ultimately found the Hebrew document controlled, and Katave does not challenge this finding on appeal, conceding in his brief that "some evidence was presented which would support this finding."

A bench trial regarding damages and attorney's fees took place on October 16, 2009. At the conclusion of the bench trial, the trial court awarded the Outside Investors an aggregate amount of $466,226.00 to be apportioned among the Outside Investors in accordance with a

Damages Allocation Table. The trial court further awarded attorney's fees to the Outside Investors, also to be apportioned among them.

## Analysis

### *Fraud*

We begin our analysis with Katave's second issue, in which he contends the trial court erred in entering judgment against him when the evidence was legally and factually insufficient to support the jury's finding of fraud. In a legal sufficiency review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex. 2005). We ask whether the evidence—crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not—would permit reasonable and fair-minded people to reach the verdict under review. *Id.* at 827. In our factual sufficiency review, we consider all the evidence; we will set aside the finding only if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex. 2001).

In the case before us, the jury determined Katave committed fraud by nondisclosure against the Outside Investors. Katave argues the evidence was insufficient to show he owed a duty of disclosure. We disagree.

Fraud by omission is a subcategory of fraud because the omission or nondisclosure may be as misleading as a positive misrepresentation of fact where a party has a duty to disclose. *Myre v. Meletio*, 307 S.W.3d 839, 843 (Tex. App.—Dallas 2010, pet. denied) (citing *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos., Inc.,* 217 S.W.3d 653, 670 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)). Thus, silence may be equivalent to a false representation when the circumstances impose a duty to speak on the party, and the party deliberately remains silent.

*Bradford v. Vento,* 48 S.W.3d 749, 755 (Tex. 2001). In the absence of a duty to disclose, however, a failure to disclose does not constitute fraud. *See Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex. 1998); *Marshall v. Kusch,* 84 S.W.3d 781, 786 (Tex. App.—Dallas 2002, pet. denied). A duty to disclose may arise in certain situations involving partial disclosure or when the parties have a confidential or fiduciary relationship. *See Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.,* 237 S.W.3d 379, 385 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Whether such a duty exists is a question of law. *Marshall,* 84 S.W.3d at 786.

Katave argues he had no duty to disclose that he "intended to make distributions under the English [Agreement]." However, the Outside Investors did not complain of Katave's undisclosed intention to distribute under the English Agreement. Rather, the Outside Investors complained Katave represented the English Agreement contained terms "consistent with" the Hebrew Agreement. Goldberg testified the Hebrew Agreement contained the terms agreed to by both the Promotion Group and the Outside Investors. Goldberg also explained he expected the English Agreement to contain the same terms as the Hebrew Agreement (as well as tax and administrative provisions that did not vary the terms). Bartal explained the Outside Investors "all wanted to be sure that the Partnership Agreement in English will say exactly what we agreed upon in the Hebrew language."

On appeal, Katave does not dispute the Outside Investors' assertion that the terms of the English Agreement vary from the terms of the Hebrew Agreement. Our review of the two documents demonstrates the terms do, in fact, vary between the English Agreement and the translated version of the Hebrew Agreement. Yet, Katave did not produce a copy of the English Agreement to Goldberg, a fellow member of the Promotion Group, until after the property had been purchased. Goldberg testified he was not aware the terms varied between the Hebrew Agreement and the English Agreement until the property in question sold.

Katave argues, because there was no "confidential or fiduciary relationship" between himself and the Outside Investors, he had no duty of disclosure. However, a confidential or fiduciary relationship is only one of the settings in which the duty to disclose may arise. *See Solutioneers*, 237 S.W.3d at 385. The duty to disclose may also arise (1) when one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth, (2) when one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue, or (3) when one party makes a partial disclosure and conveys a false impression, which gives rise to the duty to speak. *See id.* (citing *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex. 1998); *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos.,* 217 S.W.3d 653, 670-71 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

Based on our review of the record, we conclude Katave's failure to correct the Outside Investors' false impression that the terms of the Hebrew Agreement and English Agreement were consistent constituted fraud by nondisclosure. *See Solutioneers*, 237 S.W.3d at 385. We, therefore, conclude the evidence is both legally and factually sufficient to support the jury's finding of fraud as to Katave. *See City of Keller,* 168 S.W.3d at 822; *Dow,* 46 S.W.3d at 242. We overrule Katave's second issue.

### *Measure of Damages*

In his first issue, Katave alleges the trial court erred in entering judgment against him "given that the parties did not stipulate as to the measure of damages to be used as to the fraud claim or that the Trial Court could decide upon that measure of damages."

We first note Katave does not contest on appeal the amount of damages actually awarded to the Outside Investors, but argues the trial court should have never determined what those damages were in the first place. Specifically, Katave contends the parties "did not stipulate

generally that the trial court would determine damages." Katave further asserts the stipulation was "limited only as to the calculation of the difference between what the Outside Investors were paid under the English [Agreement] and what they should have received under the Hebrew [Agreement]."

Stipulations between parties amount to a contract between the parties, and they are subject to judicial interpretation and construction. *See Fourticq v. Fireman's Fund Ins. Co.*, 679 S.W.2d 562, 566 (Tex. App.—Dallas 1984, no writ). In construing a stipulation, a court must determine the intent of the parties from the language used in the entire agreement, examining the surrounding circumstances, including the state of the pleadings, the allegations made therein, and the attitude of the parties with respect to the issue. *In re C.C.J.*, 244 S.W.3d 911, 921 (Tex. App.—Dallas 2008, no pet.).

At the close of the evidence, counsel for the Outside Investors announced a joint stipulation "that the parties will submit all issues of damages and attorneys' fees to the Court." Counsel for Katave then responded to the stipulation, in pertinent part, as follows:

> As far as *damages*, what we are submitting to the Court is the–is how much–we've stipulated to what the calculation was and what the actual distribution was under the English document.

> What we would submit to the Court would be, if it becomes necessary, the proper way to calculate the distribution under the Hebrew document. I don't know what other issues of *damages* there would be other than that and what was stipulated to and then the attorney fees, but that is the stipulations limited to that.

(Emphasis added). Counsel for the Outside Investors then responded:

> There are *no other actual damages* that I believe we are seeking, other than the attorneys' fees and recoupment of this money that was–we contend was improperly *distributed*.

(Emphasis added). This statement is immediately followed by the trial judge's question: "So we have an agreement on that?" The record reflects both parties responded, "Yes."

A reasonable interpretation of the record demonstrates the parties agreed to submit a determination of damages (the proper amount of the distributions) to the trial court. *See In re C.C.J.*, 244 S.W.3d at 921. The parties further agreed there were "no other actual damages" beyond the attorney's fees and distributions. Stipulated facts are binding on the parties, the trial court, and the reviewing court. *Wells Fargo Bank Northwest, N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 698 (Tex. App.—Dallas 2012, no pet.). Therefore, we conclude, on the record before us, the trial court properly made an award of damages. *See id.; In re C.C.J.*, 244 S.W.3d at 921.

Katave further argues the trial court "went beyond the parties' stipulation and chose to apply the 'benefit-of-the-bargain' measure over the 'out-of-pocket' measure of damages." We conclude this argument is also without merit.

Katave does not dispute that the two measures of direct damages for fraud are the out-of-pocket measure and the benefit-of-the-bargain measure. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 49 (Tex. 1998). The out-of-pocket measure is the difference between the value paid and the value received, and the benefit-of-the-bargain measure is the difference between the value as represented and the value received. *Id.; see also Highland Capital Mgmt., L.P. v. Ryder Scott Co.*, 402 S.W.3d 719, 728 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

Because the record before us demonstrates the Outside Investors recovered their original investment, the out-of-pocket measure would not apply. *See Formosa*, 960 S.W.2d at 49. Rather, the Outside Investors sought to recover the benefit of their bargain (the difference between the distributions under the Hebrew Agreement and the English argument) from Katave. The jury found the Outside Investors suffered "injury as a result of acting without knowledge of the undisclosed fact." We have already determined the evidence was sufficient to find Katave

committed fraud by nondisclosure against the Outside Investors.  Therefore, we conclude the trial court properly used benefit-of-the-bargain as the measure of damages.  *See id.*  We overrule Katave's first issue.

### *Judgment In Favor Of Non-Testifying Witnesses*

Katave next argues the trial court erred in entering judgment against Katave "as to those Outside Investors who did not testify at trial given that there was a legal and factual insufficiency of the evidence to support the jury's findings."

Only three of the Outside Investors testified at trial (Bartel, Greenstein, and Grunhaus).  Katave, therefore, argues there was no evidence the non-testifying Outside Investors relied upon any statement or omission.  We disagree.

Our sister court has already addressed a similar situation in which not all investors testified.  *See Matis v. Golden*, 228 S.W.3d 301 (Tex. App.—Waco 2007, no pet.).  Like in *Matis*, the investors who did appear at trial in this case testified as to their reliance.  For example, Bartal explained the Outside Investors "all wanted to be sure that the Partnership Agreement in English will say exactly what we agreed upon in the Hebrew language."  Greenstein testified "*we relied* on [Katave]" when it came to the English Agreement. (emphasis added).  Grunhaus testified he wired his money to Katave, understanding the Hebrew Agreement governed the transaction.  We conclude, therefore, that the non-testifying investors were entitled to recover for fraud, even though they did not appear and testify at trial.  *See id.* at 306.  Further, like in *Matis*, we conclude that evidence of the Outside Investors funding the investment was sufficient evidence of their reliance.  *See id.* at 311-12.  We overrule Katave's third issue.

### *Attorney's Fees*

In his fourth issue, Katave argues the trial court erred in entering judgment against him for attorney's fees based upon the jury's verdict of fraud.  We agree.

–10–

An appellate court reviews a trial court's decision to award or not award attorney's fees under an abuse of discretion standard of review. *Ridge Oil Co. v. Guinn Invs., Inc.,* 148 S.W.3d 143, 163 (Tex. 2004). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner, or when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985).

It has long been the rule in Texas that attorney's fees paid to prosecute or defend a lawsuit cannot be recovered in that suit absent a statute or contract that allows for their recovery. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Development & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009) (citing *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 310–11 (Tex. 2006) ("Absent a contract or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees."); *Wm. Cameron & Co. v. Am. Sur. Co. of N.Y.,* 55 S.W.2d 1032, 1035 (Tex. Comm'n App. 1932, judgm't adopted) ("It is settled law in this state that, unless provided for by statute or by contract between the parties, attorneys' fees incurred by a party to litigation are not recoverable against his adversary either in an action in tort or a suit upon a contract."); *Sherrick v. Wyland,* 37 S.W. 345, 345 (Tex. Civ. App. 1896) ("It has often been ruled, in this state and elsewhere, that fees of counsel, incurred in prosecuting a suit for or defending against a wrong, are not ordinarily recoverable as actual damages, because they are not considered proximate results of such wrong.")).

In their original and supplemental briefing, the Outside Investors argue they are entitled to the awarded fees against Katave, because they sought such fees pursuant to chapter 38. *See* TEX. CIV. PRAC. & REM. CODE ANN. §38.001. Chapter 38 provides a list of claims eligible for an award of such fees, and the Outside Investors allege their claim against Katave falls within the "contract-based" provision. *See* TEX. CIV. PRAC. & REM. CODE ANN. §38.001 (8). However, the Outside Investors plead and prevailed against Katave on the basis of their fraud claim, not a

claim for contract. When prevailing on a claim for fraud, a party may not recover attorney's fees. *See Tony Gullo Motors, L.L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006) (stating for fraud, a party may recover economic damages, mental anguish, and exemplary damages, but not attorney's fees).

Still, the Outside Investors request this court to afford a liberal construction to chapter 38 and affirm the award of fees. *See id.* at §38.005. However, in our efforts to afford a liberal construction, we cannot obliterate the basic requirement for a party to plead its right to affirmative relief. *See Mullen v. Roberts,* 423 S.W.2d 576, 579 (Tex. 1968) (stating a party is not entitled to obtain relief on a cause of action, which it failed to sufficiently plead). Furthermore, we cannot ignore precedent, which requires this Court to award attorney's fees only when a statute or contract allows for their recovery. *See Akin, Gump*, 299 S.W.3d at 120.

Because the Outside Investors plead and prevailed against Katave only as to their claim of fraud, we conclude the trial court abused its discretion in awarding attorney's fees against him. *See Ridge Oil*, 148 S.W.3d at 163. We sustain Katave's fourth issue.

### *Conclusion*

Having overruled Katave's first three issues and having sustained his fourth issue, we reverse the trial court's judgment in part and judgment is rendered the Outside Investors take nothing on their claim for attorney's fees against Katave. The trial court's judgment is affirmed against Katave in all other respects.

110617F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

K.A.WEST, LLC & DANNY KATAVE,
Appellants

No. 05-11-00617-CV      V.

GK INVESTMENTS, INC., MICHAEL
BAREKET, ET AL, Appellees

On Appeal from the 298th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 06-08847.
Opinion delivered by Justice Bridges.
Justices Lang and Richter participating.

In accordance with this Court's opinion of this date, we **REVERSE** the trial court's judgment in part and judgment is **RENDERED** the Outside Investors take nothing on their claim for attorney's fees against Katave. The trial court's judgment is **AFFIRMED** against Katave in all other respects. It is **ORDERED** that each party pay their own costs of this appeal.

Judgment entered September 17, 2013

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE