**Reverse and Remand and Opinion Filed July 20, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-01415-CV

**SOUTHAMPTON LTD. AND SOUTHWEST REINSURANCE, INC., Appellants**

**V.**

**FOUR HORSEMEN AUTO GROUP, INC., CHISHOLM TRAIL AUTO GROUP, LLC, CHISHOLM TRAIL AUTO GROUP II, LLC, AND CHISHOLM TRAIL REAL ESTATE, LLC, Appellees**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-13331**

## MEMORANDUM OPINION

Before Justices Bridges, Francis, and Myers
Opinion by Justice Bridges

Southampton, LTD. and Southwest Reinsurance, Inc. appeal, following the trial court's granting of the special appearance of Four Horsemen Auto Group, Inc., Chisholm Trail Auto Group, LLC, Chisholm Trail Auto Group II, LLC, and Chisholm Trail Real Estate, LLC., after final judgment in their favor against Michael J. Terry individually. In two issues, appellants argue (1) this Court has jurisdiction to hear their challenge to the trial court's order granting the special appearance of Four Horsemen and the Chisholm entities, and (2) the trial court erred in granting the special appearance because Terry had authority to enter agreements containing Texas forum selection clauses on behalf of Four Horsemen and the Chisholm entities. We

reverse the trial court's order granting the special appearance and remand for further proceedings.

On November 9, 2012, Southampton and Southwest made a $500,000 loan to Terry for the purpose of investing in automobile dealerships. Terry, the Chisholm entities, and Four Horsemen agreed to sell vehicle service contracts and other products offered by Southwest, the proceeds from which could be used to pay down the note. At that time, Terry was a managing member of the Chisholm entities and Four Horsemen, and the Chisholm entities and Four Horsemen agreed to guarantee Terry's payment obligations under the promissory note and agreed to be jointly and severally liable for that obligation. The Chisholm entities filed with the Oklahoma Secretary of State a trade name report showing Chisholm Trail Auto Group would conduct business as "Mike Terry Chevrolet Buick GMC," and Chisholm Trail Auto Group II would conduct business as "Mike Terry Chrysler Dodge Jeep Ram."

In addition to the promissory note, Terry signed, individually and as managing member of the Chisholm entities and Four Horsemen, a guaranty and two additional agreements relating to the vehicle service contracts and guaranteed auto protection contracts offered by Southwest. The guaranty and additional agreements contained a choice of law provision stating the courts of Dallas County, Texas would have exclusive jurisdiction over any disputes arising from any provision of the guaranty or additional agreements. When Terry, the Chisholm entities, and Four Horsemen failed to pay, Southampton and Southwest sued alleging they owed Southampton $390,283.80 plus interests, costs, and attorney's fees. In addition, Terry, the Chisholm entities, and Four Horsemen allegedly failed to comply with their agreements with Southwest and owed $103,395 in unpaid service contract and auto protection contract premiums. Southampton and Southwest alleged Terry, the Chisholm entities, and Four Horsemen breached the promissory note, the guaranty, and the additional agreements.

In January 2014, the Chisholm entities and Four Horsemen filed a special appearance alleging they were not citizens of Texas and were not parties to the contracts with Southampton and Southwest. They argued Terry "secretly negotiated and entered the personal loan and guaranty contracts," and "corporate documents" showed Terry did not have the ability to bind the Chisholm entities and Four Horsemen. Specifically, they argued Terry was a twenty-five-percent shareholder in Four Horsemen, along with three other shareholders, each with voting rights. Four Horsemen's bylaws provided that no loans would be contracted unless authorized by a resolution of the directors. Any "action without a meeting" also required "a consent in writing, stating the action to be taken, [and] . . . signed by all of the directors." Thus, "Terry did not have the right to enter contracts for indebtedness/securities without prior written consent of a majority of [Four Horsemen's] directors."

As to Chisholm Trail Auto Group and Chisholm Trail Auto Group II, two car dealerships, the petition alleged they were formed in Oklahoma in January and February 2012, with Four Horsemen as the sole original investing "member" and Terry as the "dealer principal" having day-to-day control of the dealerships. In August 2012, through a written amendment, Terry and Four Horsemen became "co-managers" of the dealerships. The dealerships' operating agreements provided that, if the dealership had more than one manager, it would "be governed by the decisions of a majority" of the managers.

As to Chisholm Trail Real Estate, the special appearance noted it was formed in Oklahoma in March 2012 and owned the property on which one of the dealerships was located. Four Horsemen was Chisholm Trail Real Estate's only designated "manager" and Four Horsemen had sole authority to borrow money or encumber its property. The Chisholm entities pointed out that Terry alone signed the promissory note, guaranty, and additional agreements and argued he did so fraudulently and without authority.

–3–

In their response to the special appearance, Southampton and Southwest objected that the petition was not verified, and an attached affidavit was not verified and not based on personal knowledge. Southampton and Southwest argued the Chisholm entities and Four Horsemen had waived all jurisdictional challenges by making a general appearance; had agreed to the forum-selection clauses in the promissory note, guaranty, and additional agreements; and had failed to show that the promissory note, guaranty, and additional agreements were invalid. Southampton and Southwest argued Four Horsemen's bylaws provided that one member constituted a quorum for the transaction of business, and "[t]he act of the majority of the directors at a meeting at which a quorum is present shall be the act of the directors." Thus, the bylaws "expressly permitted Terry alone to authorize himself to execute the contracts on Four Horsemen's behalf." Alternatively, Southampton and Southwest argued Four Horsemen and the Chisholm entities waived the bylaws' requirements by "entering into numerous contracts affecting and encumbering their property without conducting a formal meeting, passing a resolution, or otherwise granting or limiting the signor's authority to execute such contracts."

As an example, Southampton and Southwest attached the asset purchase agreement under which Chisholm Trail Auto Group and Chisholm Trail Auto Group II purchased dealership property and General Motors and Chrysler automobiles for $3,530,000. The purchase agreement was signed only by Terry on behalf of Chisholm Trail Auto Group and Chisholm Trail Auto Group II. Attached to the response was the affidavit of Vahid Salalati, who testified he was the CEO of Four Horsemen, "an entity that exists on paper only." Salalati testified the Four Horsemen board of directors did not pass any resolutions, did not have a minute book, and did not conduct a meeting and approve the purchase of the dealerships. The board never approved a contract and never rejected a contract. Also attached to the response was a November 2012

–4–

"certificate of incumbency" listing Terry as "Dealer Principal/Managing Member" of Four Horsemen and signed by Salalati.

Following a hearing, the trial court granted the special appearance and dismissed from the lawsuit Four Horsemen and the Chisholm entities. In October 2014, the trial court entered final judgment against Terry individually awarding Southampton and Southwest $394,634.70 plus attorney's fees. After final judgment was entered, Southampton and Southwest filed this appeal from the order granting Four Horsemen and the Chisholm entities' special appearance.

In their first issue, Southampton and Southwest argue this Court has jurisdiction to hear their challenge to the order granting the special appearance. Specifically, they argue their decision not to pursue an interlocutory appeal from the order did not waive their right to appeal the order after final judgment. We agree. A person may appeal from an interlocutory order that grants or denies the special appearance of a defendant under Rule 120a, Texas Rules of Civil Procedure. TEX. CIV. PRAC. & REM. CODE ANN. §51.04(a)(7) (West Supp. 2015). Other courts have specifically held that a challenge to a ruling on a special appearance may be made after final judgment. *See DeWolf v. Kohler*, 452 S.W.3d 373, 384 (Tex. App.—Houston [14th Dist.] 2014) (complaint regarding special-appearance ruling not waived by failing to pursue interlocutory appeal); *GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 866-67 (Tex. App.—Austin 2008, no pet.) (appellate jurisdiction to review special-appearance rulings is not limited solely to interlocutory appeals); *Canyon (Austl.) Pty., Ltd. v. Maersk Contractors, Pty., Ltd.*, No. 08–00–00248–CV, 2002 WL 997738, at *4 (Tex. App.—El Paso May 16, 2002, pet. denied) (not designated for publication) (interlocutory appeal not "mandatory" and trial court's order granting special appearance reviewable on appeal from final judgment); *see also Hernandez v. Ebrom*, 289 S.W.3d 316, 327 (Tex. 2009) (Jefferson, C.J., dissenting) (pointing "prevailing view . . . that an order granting or denying a special appearance may be challenged after final judgment"). *But*

–5–

*see Matis v. Golden*, 228 S.W.3d 301, 305 (Tex. App.—Waco 2007, no pet.) (challenge to trial court's order denying defendant's special appearance, raised for first time on appeal from final judgment, was untimely). This Court has not considered this specific issue but has considered an analogous question and concluded that, in the context of denials of motions to dismiss under the anti-SLAPP statute, failure to pursue an interlocutory appeal does not result in the waiver of the right to appeal. *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 872-73 (Tex. App.— Dallas 2014, no pet.) (permissive language creating right of interlocutory appeal in anti-SLAPP statute does not require interlocutory appeal, and party may appeal after final judgment). We conclude this Court has jurisdiction to consider Southampton and Southwest's challenge to the special appearance in this case. *Gonzalez*, 436 S.W.3d at 872-73; *Ghosh*, 251 S.W.3d at 866-67. We sustain Southampton and Southwest's first issue.

In their second issue, Southampton and Southwest argue the trial court erred in granting Four Horsemen and the Chisholm entities' special appearance. Specifically, they argue Terry had authority to enter agreements containing Texas forum selection clauses on behalf of Four Horsemen and the Chisholm entities. They argue Four Horsemen and the Chisholm entities were required to prove that the forum selection clauses themselves were the result of fraud and characterize the Four Horsemen and the Chisholm entities' argument as an unsupported argument that the agreements were void as a whole because of fraud.

Four Horsemen and the Chisholm entities argue they did not know about the contracts at issue, and Terry executed the contracts alone without actual or apparent authority. Thus, they argue, fraud exists in this case as a matter of law, and the forum-selection clauses are invalid.

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the personal jurisdiction of a Texas court. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When this burden is met, the burden shifts

to the nonresident to negate all bases of personal jurisdiction asserted by the plaintiff. *Id.* A defendant may negate jurisdiction on a legal basis by showing that even if the plaintiff's allegations are true, they do not establish jurisdiction. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). A defendant may also negate jurisdiction on a factual basis by introducing evidence that rebuts the allegations in the pleadings. *Id.*

The determination of whether a court has personal jurisdiction over a defendant is a question of law. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). When, as in this case, the trial court does not issue findings of fact and conclusions of law, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software*, 83 S.W.3d at 795. When the appellate record includes the reporter's record and clerk's record, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.* When the trial court's findings are supported by sufficient evidence, or when the material facts are undisputed, we review the trial court's ruling on a special appearance de novo. *Baker Hughes Inc. v. Brooks*, 405 S.W.3d 246, 249 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

Texas courts may assert jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Texas long-arm statute). The Texas long-arm statute allows Texas courts to exercise personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software*, 83 S.W.3d at 795 (quoting *U–Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977)). Consequently, "the requirements of the Texas long-arm statute are satisfied if an

assertion of jurisdiction accords with federal due-process limitations." *Moki Mac River Expeditions*, 221 S.W.3d at 575.

Forum-selection clauses are contractual arrangements whereby parties agree in advance to submit their disputes for resolution within a particular jurisdiction. *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 700 (Tex. App.—Dallas 2010, no pet.). In Texas, forum-selection clauses are generally considered valid and enforceable, unless enforcement is shown to be unreasonable and unjust. *Phoenix Network Techs. v. Neon Sys.*, 177 S.W.3d 605, 611 (Tex. App.—Houston [1st Dist.] 2005, no pet.). A forum-selection clause obtained through freely negotiated agreements does not offend due process, provided it is not unreasonable and unjust. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14, (1985); *CNOOC S.E. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 894 (Tex. App.—Dallas 2007, pet. denied). When claims fall within the scope of a forum-selection clause, application of the Texas long-arm statute and analysis of a defendant's contacts with Texas are unnecessary. *RSR Corp.*, 309 S.W.3d at 700.

We construe a contract containing a forum-selection clause as we do any contract, according to its plain language. *See Phoenix*, 177 S.W.3d at 615. If a contract is worded so that it can be given a certain or definite legal meaning or interpretation, we will construe the contract as a matter of law. *Enter. Leasing Co. v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). We presume the parties intended every contractual provision to have meaning. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 180 (Tex. 1997). We examine the entire contract in an attempt to harmonize its provisions, and we give effect to all of its provisions so that none will be rendered meaningless. *Frost Nat'l Bank v. L & F Dist., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005); *Coker*, 650 S.W.2d at 393.

An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or

implied authority). *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). Apparent authority is based on estoppel, arising either from a principal knowingly permitting an agent to hold himself out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority he purports to exercise. *Id.* The principal's full knowledge of all material facts is essential to establish a claim of apparent authority based on estoppel. *Id.* Moreover, when making that determination, only the conduct of the principal is relevant. *Id.* Finally, the standard is that of a reasonably prudent person, using diligence and discretion to ascertain the agent's authority. *Id.* at 183. Thus, to determine an agent's apparent authority we examine the conduct of the principal and the reasonableness of the third party's assumptions about authority. *Id.*

Here, Terry owned a twenty-five-percent interest in Four Horsemen. Four Horsemen's bylaws provided that one member constituted a quorum for the transaction of business, and "[t]he act of the majority of the directors at a meeting at which a quorum is present shall be the act of the directors." Thus, the bylaws "expressly permitted Terry alone to authorize himself to execute the contracts on Four Horsemen's behalf." Salalati testified Four Horsemen was "an entity that exists on paper only." Salalati testified the Four Horsemen board of directors did not pass any resolutions, did not have a minute book, and did not conduct a meeting and approve the purchase of the dealerships. The board never approved a contract and never rejected a contract.

Four Horsemen and Terry were "co-managers" of the dealerships, with Terry being the "dealer principal." Both dealerships conducted business under the trade names of "Mike Terry" dealerships. When the Chisholm entities purchased the dealerships initially for $3,530,000, Terry alone signed the purchase documents as "Manager & Dealer Principal." A November 9, 2012 "certificate of incumbency" listed Terry as "Dealer Principal/Managing Member" of Four

Horsemen and was signed by Salalati. That same day, Terry signed the promissory note, guaranty, and additional agreements with Southampton and Southwest as "Dealer Principal/Managing Member" of Four Horsemen and the Chisholm entities. Thus, it appears Terry was, at the very least, acting with apparent authority to sign the promissory note, guaranty, and additional agreements on behalf of himself, Four Horsemen, and the Chisholm entities. Four Horsemen and the Chisholm entities put the name "Mike Terry" on the dealerships, represented on the day of the contracts at issue that Terry was "Dealer Principal/Managing Member" of Four Horsemen. *See id.* Because we conclude Terry had apparent authority to enter the contracts, we reject Four Horsemen and the Chisholm entities' argument that Terry committed fraud in entering the contracts. The promissory note, guaranty, and additional agreements all contain Texas choice-of-law provisions, and nothing in the record indicates that provision was not freely negotiated. *See Burger King*, 471 U.S. at 473 n. 14; *CNOOC*, 222 S.W.3d at 894. Under these circumstances, we conclude the trial court erred in granting the special appearance of Four Horsemen and the Chisholm entities and dismissing Southampton and Southwest's claims against them. *See Moncrief Oil*, 414 S.W.3d at 150. We sustain Southampton and Southwest's second issue.

We reverse the trial court's order granting the special appearance of Four Horsemen and the Chisholm entities and remand for further proceedings consistent with this opinion.


/David L. Bridges/
DAVID L. BRIDGES
JUSTICE


141415F.P05


–10–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

| | |
|---|---|
| SOUTHAMPTON LTD. AND SOUTHWEST REINSURANCE, INC., Appellants | On Appeal from the 101st Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-13-13331. Opinion delivered by Justice Bridges. |
| No. 05-14-01415-CV        V. | Justices Francis and Myers participating. |
| FOUR HORSEMEN AUTO GROUP, INC., CHISHOLM TRAIL AUTO GROUP, LLC, CHISHOLM TRAIL AUTO GROUP II, LLC , CHISHOLM TRAIL REAL ESTATE, LLC, Appellees | |

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants SOUTHAMPTON LTD. AND SOUTHWEST REINSURANCE, INC. recover their costs of this appeal from appellees FOUR HORSEMEN AUTO GROUP, INC., CHISHOLM TRAIL AUTO GROUP, LLC, CHISHOLM TRAIL AUTO GROUP II, LLC , CHISHOLM TRAIL REAL ESTATE, LLC.

Judgment entered July 20, 2016.