**BANK OF AMERICA, N.A., Appellant,**

v.

**Helen HUBLER, Appellee.**

**No. 10–05–00404–CV.**

Court of Appeals of Texas, Waco.

Dec. 6, 2006.

Rehearing Overruled Jan. 16, 2007.

Thomas M. Valega, Jr., Hirsch & Westheimer, PC, Houston, for appellant.

Steven M. Burton, Sheehy Lovelace & Mayfield, Waco, David L. Hodges, Amsler Amsler & Stearns, McGregor, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Helen Hubler filed suit against Bank of America, N.A. after the Bank withdrew funds from her account to pay a check for which the Bank had previously stopped payment. The court rendered judgment in Hubler's favor. On appeal, the Bank contends: (1) there is no evidence or factually insufficient evidence that it breached the parties' deposit agreement; (2) there is no evidence or factually insufficient evidence of contractual modification; (3) Hubler's tort claims are barred because they sound in contract only; (4) there is no evidence or factually insufficient evidence of causation; (5) there is no evidence or factually insufficient evidence that Hubler's reliance was justifiable; and (6) Hubler failed to mitigate her damages. In one cross-point, Hubler challenges the court's failure to award attorney's fees. We will affirm in part and reverse and remand in part.

## BACKGROUND

Hubler hired Wade Morrow to construct a barn for $47,500. Morrow requested the money in advance, which Hubler paid with a check. Both Hubler and Morrow maintained accounts at Bank of America. Karen Tse, a Bank representative, subsequently contacted Hubler to inquire about the check because Morrow's account had previously exhibited little activity. Hubler acknowledged writing the check. After continued conversation with Tse, Hubler grew concerned and requested a stop-payment. Tse accepted the request. That same day, another Bank representative initially declined to stop-payment. After speaking with Tse, the representative agreed to honor the request. Hubler received a stop-payment notice, and the funds were returned to her account.

A few days later, Hubler received a call informing her that the Bank could not stop-payment and the funds would again be withdrawn from her account. The Bank also sent a letter explaining that it was too late to stop payment because Hubler's request came after Morrow had already negotiated the check. Morrow then withdrew all the funds from his account.

## STANDARDS OF REVIEW

A no evidence issue requires consideration of "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." Id. This standard also applies to a court's findings made in a bench trial. *See Kilpatrick v. McKenzie,* No. 14–04–00986–CV, 2006 WL 1675421, at *2 (Tex.App.-Houston [14th Dist.] June 20, 2006, no pet.); *see also Ludwig v. Encore Med., L.P.,* 191 S.W.3d 285, 294 (Tex.App.-Austin 2006, pet. denied); *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994).

A factual sufficiency challenge to issues on which the appellant did not bear the burden of proof requires us to "consider and weigh all of the evidence." *Checker Bag Co. v. Washington,* 27 S.W.3d 625, 633 (Tex.App.-Waco 2000, pet. denied). We will reverse the "verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust." *Id.* On issues where the appellant "bears the burden of proof," we will reverse only if, "considering all the evidence, the finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust." *Id.*

## BREACH OF CONTRACT

In its first issue, the Bank contends there is no evidence or factually insufficient evidence to support the finding that the Bank breached its contract with Hubler. The contract provides:

> For example, if you give us a stop-payment order after our cutoff time and the item you want to stop was presented for payment the previous business day, your order comes too late to stop-payment on the item.[1]
>
> . . .
>
> We may debit your account for a check or other item drawn on your account either on the day it is presented to us for payment, by electronic or other means, or on the day we receive notice that the item has been deposited for collection at another financial institution—whichever is earlier.

The Bank relies on these provisions for the proposition that it cannot be held liable for breach because Hubler's stop-payment request came after presentment and after the Bank's cutoff time.[2]

It is undisputed that Hubler's stop-payment request came too late under the terms of the deposit agreement. However, the facts presented differ from those contemplated by the contract. First, despite the contractual language, the Bank stopped payment and returned the funds to Hubler's account. Second, after stopping payment and crediting Hubler's account, the Bank reversed the transaction. The court found this conduct to constitute a breach of the deposit agreement:

> the check and after the Bank's cutoff time, and the Bank was authorized to pay the check.

---

1. The Bank's cutoff time is 10:00 a.m.

2. Hubler admitted the contract addresses the facts of this case, that her verbal stop-payment request came after Morrow presented

Bank of America, N.A. breached its agreement when, on December 24, 2003, without authorization from Plaintiff, it debited the amount of $47,500.00 from Plaintiff's account, thus depriving Plaintiff the rightful use of said funds.

■ "When a customer deposits funds with a bank, the bank impliedly agrees to disburse those funds only in accordance with the depositor's instructions." *FNFS, Ltd. v. Sec. State Bank & Trust,* 63 S.W.3d 546, 550 (Tex.App.-Austin 2001, pet. denied); *La Sara Grain Co. v. First Nat'l Bank,* 673 S.W.2d 558, 564 (Tex.1984). At trial, Billy Fleming, president of Texas Star Bank, testified that once a stop-payment is granted, a bank loses the customer's authority to pay the item.[3] As the record indicates, the Bank did stop payment. Nevertheless, without Hubler's authorization, the Bank debited her account and returned the funds to Morrow's account.

■ Once the Bank stopped payment, it no longer possessed authority to pay the item. By debiting Hubler's account without her authorization, the Bank breached its agreement to disburse funds only in accordance with its customer's instructions. *See FNFS,* 63 S.W.3d at 550; *see also La Sara,* 673 S.W.2d at 564. The court could reasonably conclude that the Bank breached its agreement with Hubler when it debited her account without authorization. *See Wilson,* 168 S.W.3d at 827. Thus, there is some evidence and factually sufficient evidence to support the finding that the Bank breached the contract; we overrule the Bank's first issue. *See id; see Washington,* 27 S.W.3d at 633.

Accordingly, we need not address the Bank's second issue. *See* Tex.R.App. P. 47.1.

## ECONOMIC LOSS RULE

The Bank's third issue asserts that the economic loss rule bars Hubler's tort claims because no independent injury or misrepresentation exists.

■ A party cannot recover "economic losses in negligence when the loss is the subject matter of a contract between the parties." *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282, 285 (Tex.App.-Houston [14th Dist.] 2000, no pet.). If the "injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Tarrant County Hosp. Dist. v. GE Automation Servs.,* 156 S.W.3d 885, 895 (Tex. App.-Fort Worth 2005, no pet.). If the "defendant's conduct gives rise to liability independent of a contract's existence, the plaintiff's claim may sound in tort." *Dennis Jewelry Co. v. Sonitrol Mgmt. Corp.,* No. 04–01–00279–CV, 2003 WL 179618 at *3, 2003 Tex.App. Lexis 804 at *7 (Tex. App.-San Antonio 2003, no pet.). The "nature of the injury suffered determines whether a cause of action in tort exists." *Id.* We look to the "substance of the cause of action, not the manner in which it was plead, to determine the type of action that is brought." *Tarrant County Hosp. Dist.,* 156 S.W.3d at 895; *see Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 617–18 (Tex. 1986).

Hubler's breach of contract and negligent misrepresentation claims are both "based on the same factual scenario," namely the Bank's unauthorized withdrawal after stopping payment. *Cessna Aircraft Co. v. Aircraft Network, L.L.C.,* 200 S.W.3d 203, 215 (Tex.App.-Dallas 2006, no pet.). Hubler contends the Bank misrepresented the safety of her money. Yet,

---

**3.** Hubler pleaded breach of contract based on the Bank's conduct of debiting her account without authorization after honoring the stop-payment request.

her "assertions amount to nothing more than a complaint" regarding the Bank's failure to comply with the deposit agreement and the Bank's "actions contrary to these representations result only in a breach of contract." *Frost Nat'l Bank v. Heafner,* 12 S.W.3d 104, 111–12 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). Had the Bank not improperly withdrawn Hubler's funds after honoring the stop-payment, there would be no breach of contract and, consequently, no dispute. *See Agillion, Inc. v. Oliver,* 114 S.W.3d 86, 91 (Tex.App.-Austin 2003, no pet.).

■ Therefore, because Hubler's claim is purely economic and "sounds in contract alone," she has suffered no injury independent of her contract claim. *Tarrant County Hosp. Dist.,* 156 S.W.3d at 895; *see Cessna Aircraft,* 200 S.W.3d at 215. There is no evidence to support a finding of negligent misrepresentation. *See Wilson,* 168 S.W.3d at 827; *see also Washington,* 27 S.W.3d at 633. We sustain the Bank's third issue. For this reason, we do not address the Bank's fifth issue. *See* TEX.R.APP. P. 47.1.

## CAUSATION

In its fourth issue, the Bank claims there is no evidence of causation to support Hubler's breach of contract and negligent misrepresentation claims. In light of our disposition of the Bank's third issue, we need only address causation in a breach of contract context. *See id.*

■ To prove breach of contract, a party must show: (1) a valid contract with the defendant; (2) plaintiff performed or tendered performance; (3) defendant breached the contract; and (4) plaintiff suffered damages as a result of the breach. *Critchfield v. Smith,* 151 S.W.3d 225, 233 (Tex. App.-Tyler 2004, pet. denied); *Runge v.*

*Raytheon E–Systems, Inc.,* 57 S.W.3d 562, 565 (Tex.App.-Waco 2001, no pet.).

■ The court awarded $47,500 in damages, the amount paid by the Bank without Hubler's authorization. As previously discussed, the court could reasonably conclude that the Bank breached its agreement to disburse funds at the customer's instructions alone. As a result of the Bank's breach, Hubler suffered damages in the amount of $47,500. *See Critchfield,* 151 S.W.3d at 233; *see also Runge,* 57 S.W.3d at 565. Thus, there is some evidence and factually sufficient evidence to support the finding that the Bank's breach of contract caused $47,500 in damages, the amount withdrawn from Hubler's account "without proper authorization." *La Sara,* 673 S.W.2d at 564; *see Wilson,* 168 S.W.3d at 827; *see also Washington,* 27 S.W.3d at 633. We overrule the Bank's fourth issue.

## FAILURE TO MITIGATE

In its sixth issue, the Bank argues that the court erroneously refused to find that Hubler failed to mitigate her damages.[4] Hubler responds that the Bank failed to preserve this argument for appeal. We agree.

■ "A party asserting an affirmative defense, such as mitigation, in a trial before the court must request findings in support thereof to avoid waiver." *Cotten v. Weatherford Bancshares, Inc.,* 187 S.W.3d 687, 708 (Tex.App.-Fort Worth 2006, pet. denied). If the court's findings exclude "any element of the defense asserted, then the party's failure to make a timely request for additional findings relevant thereto is a waiver of the right to complain on appeal of the court's lack of such findings." *Id; see Chen v. Tseng,* No. 01–02–01005–CV, 2004 WL 35989, at

---

4. The Bank pleaded failure to mitigate as an affirmative defense.

*4, 2004 Tex.App. Lexis 264, at *12–13 (Tex.App.-Houston [1st Dist.] Jan. 8, 2004, no pet.) (mem. op.).

After the court signed its judgment, the Bank proposed the following findings:

> Mrs. Hubler could have frozen the funds in Mr. Morrow's account by obtaining a temporary restraining order sometime between December 24, 2003 and January 2, 2004.
>
> Mrs. Hubler did not seek a temporary restraining order or any other legal remedy before filing suit against the Bank.
>
> Mrs. Hubler therefore failed to mitigate all but $6,778.88 of her damages.

The court's findings of fact and conclusions of law failed to incorporate any of the Bank's proposed findings. In fact, the court's findings excluded any reference to mitigation of damages. The Bank filed no request for additional findings.

 Although the Bank filed proposed findings addressing the issue of mitigation, when the court's findings excluded any elements of mitigation, the Bank was required to request additional findings. *See Cotten,* 187 S.W.3d at 708–09; *see also* Tex.R. Civ. P. 298. Having neglected to do so, the Bank has failed to preserve its complaint for appellate review. *See Cotten,* 187 S.W.3d at 708. We overrule the Bank's sixth issue.

### ATTORNEY'S FEES

In her sole cross-point, Hubler challenges the court's failure to award attorney's fees. The Bank responds that the contract bars recovery of attorney's fees and there is no evidence of reasonableness to support such an award.

### Contractual Attorney's Fees

 "A prevailing party cannot recover attorney's fees from an opposing party unless permitted by statute or by contract between the parties." *Holland v. Wal–Mart Stores,* 1 S.W.3d 91, 95 (Tex. 1999). A party may waive the right to recover attorney's fees under Chapter 38 of the Civil Practice and Remedies Code. *See Tex. Nat'l Bank v. Sandia Mortg. Corp.,* 872 F.2d 692, 701 (5th Cir.1989); *see also Century Prods. Co. v. Cosco, Inc.,* 2003 WL 251957, at *8 n. 5, 2003 U.S. Dist. Lexis 1419 at *24 n. 5 (N.D.Tex. Jan. 31, 2003) (not designated for publication). However, waiver constitutes "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Texas Nat'l Bank,* 872 F.2d at 701. Therefore, "to waive or contract-around a specific protection the law accords requires specificity." Id. Absent a contractual clause *specifically* excluding a "statutory claim to an award of attorney's fees" under Chapter 38, "no valid waiver can occur because the party giving up the right does not know what he or she is relinquishing." *Id.*

 The parties' contract states that the Bank is not liable for "special or consequential losses or damages of any kind, including loss of profits and opportunity or for *attorney's fees* incurred." The Bank contends this provision bars Hubler's claim for attorney's fees. We disagree. The contract's language is too general to apprise Hubler of what rights she is relinquishing, namely her statutory right to attorney's fees under Chapter 38. *See id.* Accordingly, the contract is not sufficiently specific to constitute a waiver of statutory attorney's fees. *See id.*

### Statutory Attorney's Fees

A party prevailing on a claim for "oral or written contract" is entitled to attorney's fees upon a showing that the fees are reasonable and necessary and: (1) the claimant is represented by counsel; (2) the

claimant presented the claim to the opposing party; and (3) payment was not tendered within thirty days after presentment. TEX. CIV. PRAC. & REM.CODE ANN. §§ 38.001(8), 38.002 (Vernon 1997); *see Doncaster v. Hernaiz*, 161 S.W.3d 594, 606 (Tex.App.-San Antonio 2005, no pet); *see also Manon v. Tejas Toyota, Inc.*, 162 S.W.3d 743, 751 (Tex.App.-Houston [14th Dist.] 2005, no pet.). A court's ruling on attorney's fees is reviewed for abuse of discretion. *See Paul v. Merrill Lynch Trust Co.*, 183 S.W.3d 805, 812 (Tex.App.-Waco 2005, no pet.).

The record indicates that Hubler was represented by counsel, presented a demand to the Bank, and received no tender of payment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.002; *see also Doncaster*, 161 S.W.3d at 606. At trial, three attorneys testified regarding attorney's fees. Phil Robertson testified, as an expert witness, that Hubler's attorneys charged a reasonable and customary rate, but he could not formulate an opinion as to the reasonableness of any specific or total fees. A portion of Robertson's deposition read into the record confirms that he could only testify to the reasonableness of the rate, not the total amount charged. Robertson testified that a reasonable and customary attorney's fee would be $125 to $200 per hour.

Hubler's attorneys, David Hodges and Steve Burton, testified as fact witnesses.[5] Hodges testified that he and Burton sought to divide the duties associated with Hubler's lawsuit and:

> I think that I actually have at a very minimum of seventy billable hours in this case and those hours relate to my initial conference with her, my investigation of the facts of this case, my research of the law in this case, drafting

pleadings, responding to their requests for discovery, sending requests for discovery, meeting with the client, coming to court for various hearings, getting ready for trial, and preparing Mrs. Hubler for trial and appearing at this trial today.

Burton testified that his hourly rate is $200 per hour and his firm contributed approximately 100 hours to Hubler's case and incurred $19,000 in attorney's fees for responding to motions, attending depositions and attending trial.

■■■ "Expert testimony is required to support an award of attorneys' fees." *Cantu v. Moore*, 90 S.W.3d 821, 826 (Tex. App.-San Antonio 2002, pet. denied). Robertson's expert testimony establishes the reasonableness of the hourly fees charged by Hubler's attorneys. *See id.* Furthermore, Hodges and Burton were qualified to testify to the facts of their representation, specifically the time expended and the type of work conducted. *See Budd v. Gay*, 846 S.W.2d 521, 524 (Tex.App.-Houston [14th Dist.] 1993, no writ). The Bank presented no evidence contradicting this testimony. *See McMillin v. State Farm Lloyds*, 180 S.W.3d 183, 210 (Tex.App.-Austin 2005, no pet.).

■■■ A court has "discretion to fix the amount of attorney's fees, but it does not have the discretion to completely deny attorney's fees if they are proper under section 38.001." *World Help v. Leisure Lifestyles*, 977 S.W.2d 662, 683 (Tex.App.-Fort Worth 1998, pet. denied). Because the evidence shows the reasonableness of Hubler's attorney's fees, the court abused its discretion by denying her attorney's fees. *See Paul*, 183 S.W.3d at 812.

However, the "record does not conclusively prove any particular amount that was a reasonable and necessary amount of

---

5. Hodges and Burton were not designated as expert witnesses.

attorney's fees." *See McMillin,* 180 S.W.3d at 211. Accordingly, we sustain Hubler's sole cross-point and remand the case to the trial court for consideration of the amount of attorney's fees to be awarded to Hubler. *See id.*

### CONCLUSION

Because Hubler's tort claims are barred by the economic loss rule, we modify the court's judgment to delete the finding that the Bank's negligent misrepresentation proximately caused Hubler's damages. We reverse that portion of the judgment denying attorney's fees and remand this cause to the trial court for determination of the amount of attorney's fees to be awarded to Hubler. The judgment is affirmed in all other respects.

Chief Justice GRAY dissents without a separate opinion.