In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-20-00037-CV
_____

GULF COAST FIBER SERVICES, LLC, Appellant

V.

BMF DRILLING, LLC, Appellee

On Appeal from the 410th District Court
Montgomery County, Texas
Trial Cause No. 18-09-12951-CV

MEMORANDUM OPINION

This appeal arose from a lawsuit filed by BMF Drilling, LLC, (BMF) to collect a debt over the work it performed on a construction project where BMF buried around 10,000 linear feet of 2 inch and smaller conduit at the defendant, Gulf Coast Fiber Services, LLC's, request. Gulf Coast responded to the suit by filing an answer that included several affirmative defenses and a counterclaim, which alleged that BMF is the party who first breached the parties' written agreement.

1

The parties tried the case before a jury, which found: (1) Gulf Coast "fail[ed] to comply with the Agreement"; (2) "BMF fail[ed] to comply with the Agreement"; (3) BMF "failed to comply with the Agreement first"; (4) BMF's "failure to comply was not excused"; and (5) BMF "substantially perform[ed] all of its obligations in the Agreement." As to damages, the jury awarded BMF $17,409 in compensation for the work BMF performed based on its finding that BMF substantially performed its obligations under the Agreement. Additionally, the jury found the attorneys for each party was entitled to recover a reasonable amount on that party's respective claim seeking to recover for attorney's fees.[1]

When the jury announced its verdict, neither party pointed out to the trial court the conflict that existed between the jury's findings on the breach of contract questions and the substantial performance questions before the trial court discharged the jury from its duties to the court. That said, after the trial court discharged the jury, Gulf Coast filed a motion for JNOV, which extended the time Gulf Coast had to file its notice that it wanted to appeal. Gulf Coast later filed a timely notice of appeal.

---

[1]We rounded all amounts referenced in the opinion to the nearest dollar.

In three appellate issues, Gulf Coast argues the trial court erred in rendering judgment that favors BMF. First, Gulf Coast argues the trial court erred in relying on the jury's finding of substantial performance in its judgment, findings based on jury questions seven and eight, when in other findings the jury found BMF breached the Agreement first, that its breach was material, and that BMF's breach was unexcused. Second, Gulf Coast argues the evidence is legally and factually insufficient to support the jury's award of $17,409 in damages. According to Gulf Coast, BMF's evidence is insufficient because it failed to introduce evidence establishing what the reasonable costs were to repair and correct the errors the jury determined existed with the work it completed at Gulf Coast's request. Third, Gulf Coast argues the trial court erred in awarding BMF attorney's fees for two reasons, first because BMF was not the prevailing party in the trial given the jury's answers to the questions that BMF breached the Agreement and that its breach was unexcused, and second because under the terms of the written Agreement, BMF's waived its right to sue Gulf Coast on a claim seeking to recover attorney's fees.

As to Gulf Coast's argument that BMF cannot recover based on the jury's answers to the questions the trial court submitted to the jury, we conclude Gulf Coast failed to preserve its complaint about the conflict between the jury's answer to the breach of contract issues and the substantial performance issue for the purpose of having the argument reviewed in its appeal. As to remaining arguments Gulf Coast relies on to support the issues it raises in the appeal, we conclude its arguments lack merit. For the reasons explained below, we conclude the trial court's judgment should be affirmed.

## Background

Gulf Coast—a company that bores horizontal holes under the ground—was hired by a commercial telecommunications company to place a fiber-optic cable within an easement and underground. Gulf Coast subcontracted some of its work to BMF, a company that specializes in horizontal-directional drilling. While Gulf Coast and BMF signed a written agreement (Agreement), the Agreement is incomplete as it reflects other documents are incorporated in the Agreement by reference. Based on the Agreement's terms, the Agreement includes the "Prime Contract between the Owner and Contractor as well as, and including,

any and all other documents, drawings and specifications enumerated therein[.]" But even though the Agreement references several other documents, none of the documents referenced in the Agreement were admitted into evidence during the trial. For instance, the evidence the jury considered did not include the Prime Contract, the drawings, or the specifications, evidence that possibly might have identified and detailed the requirements that Gulf Coast (and its subcontractors) were required to follow in performing the work. These details might have included details like how deep the horizontally drilled holes had to be drilled, whether the depths of the holes were required to be uniform throughout their length, or whether the conduit, after it was placed inside the holes, had to be protected from mud (or if infiltrated with mud, cleaned out). As to these types of details, Gulf Coast's Agreement is also silent. Instead, BMF's Agreement with Gulf Coast apparently contemplated the details would be specified in *written authorizations* Gulf Coast provided BMF to perform the work Gulf Coast subcontracted out. As to the written authorizations, the Agreement states: "Upon execution of this Agreement, [Gulf Coast] will, from time to time, issue to [BMF] *written authorizations* to proceed with specific work, at a certain price and upon

such other terms and conditions [as] may be set forth in a purchase order (hereinafter 'Purchase Order')." (emphasis added).

But in the trial, Gulf Coast never introduced any of the *written authorizations* into evidence. Nor did it introduce any of the other extrinsic documents that we mentioned before that might have specified details pertinent to BMF's work, such as (1) how deep it was required to drill the horizontally drilled holes; (2) whether the holes were to be drilled at uniform depths; and (3) whether BMF had to protect the conduit from being infiltrated by mud or to clean the mud out should mud enter the conduit on being inserted into the holes.

BMF worked for Gulf Coast for around four months before Gulf Coast terminated BMF from the fiber-optic cable project, ending the work BMF performed for Gulf Coast as of early July 2018. When BMF did perform its work on the project, Gulf Coast's onsite supervisor, Ryan Pemberton, supervised BMF's work. Pemberton, however, did not testify in the trial. Instead, Gulf Coast presented its case through one of its owners and its Director of Operations, Earl Epps.

According to Epps, shortly after BMF started the project, Gulf Coast began complaining that it was finding mud in conduit that BMF

6

had laid in the horizontally drilled holes that it drilled. And according to Epps, about a month after BMF began its work, Gulf Coast (apparently though Pemberton) began to complain the conduit that BMF had inserted into the holes needed to be deeper and that some of the conduit had become infiltrated with mud. Lee Winters, the owner of BMF, acknowledged that BMF had on about five occasions borrowed Gulf Coast's air compressor to correct problems that Gulf Coast identified regarding mud it found in conduit that BMF inserted in holes. However, when Winters was asked how deep the Agreement required the fiber-optic cable to be buried, he testified: "There's no industry standard for depth." And when asked whether Epps told BMF the conduit was to be buried at least three feet deep, Winters testified: "I don't recall that. It -- there is no contract document stating that." Winters also said that when the job started, Pemberton didn't tell him the holes needed to be drilled to at least a three-foot depth.

Over the four months BMF worked on the project, it submitted eight invoices to Gulf Coast, which total $90,950 for its work. Of these, Gulf Coast paid the first five invoices it received in full. But even though Gulf coast paid the first five invoices, Earl Epps testified Gulf Coast did

so only because Gulf Coast "believe[d] that everything had been properly done." He claimed that after Gulf Coast paid the invoices, it discovered the deficiencies with BMF's work. According to Epps, after Gulf Coast terminated BMF, it used its own employees to correct some of BMF's work and hired outside contractors to correct what Epps described as other work BMF performed that failed to comply with the specifications in the Agreement Gulf Coast had with BMF. So while it's undisputed that Gulf Coast paid BMF $48,357 for its work, it's also undisputed that Gulf Coast refused to pay BMF for the balance of the work it completed in the three invoices in evidence that represent an additional $42,592 of work if payable under the Agreement based on Winters' testimony about the work BMF completed on the fiber-optic cable project before it was terminated from all Gulf Coast's projects in July 2018.

During the trial, Epps described how he determined that Gulf Coast owed BMF nothing more for the work BMF performed under the invoices Gulf Coast refused to pay. According to Epps, of the total BMF charged for its work, $90,950, BMF performed only about 53 percent of the work properly—an amount that equaled exactly what Gulf Coast had already paid BMF, $48,357. Since Gulf Coast determined that it paid BMF what

it owed, Epps decided Gulf Coast owed BMF nothing more when, in July 2018, he notified BMF of Gulf Coast's decision to terminate the parties' Agreement.

In September 2018, BMF sued Gulf Coast alleging it owed BMF the remaining $42,592 that it had not paid BMF for its work. In its petition, BMF alleged that Gulf Coast failed to pay the last three of its eight invoices on the fiber-optic project. In BMF's live pleading, which BMF filed months before the trial, BMF alleged that if it was not entitled to the full amount owed under the Agreement with Gulf Coast, it was entitled to be paid what it billed less the cost to correct any non-conforming work since it substantially performed the work Gulf Coast requested of it on the project. Specifically, in its live petition, BMF alleged that because it substantially performed its obligations under its Agreement with Gulf Coast it was "entitled to full payment of the contract sum min[us] the cost of completion or remediation."

In Gulf Coast's response to BMF's live pleading, Gulf Coast asserted a general denial and a laundry list of affirmative defenses, but most of its defenses are irrelevant to the issues Gulf Coast has raised in its appeal. That said, in its live pleading, Gulf Coast asserted BMF's

9

"prior material breach of the contract for construction services" excused its obligation to pay BMF any additional consideration for any work it completed under the Agreement.

Turning to Gulf Coast's arguments supporting it claim of excuse, we observe that at two different points in the trial, Gulf Coast failed to preserve the arguments it presents in its brief for the purpose of its appeal. First, when the parties objected to the charge, Gulf Coast's attorney failed to object to the predicate instruction that accompanied BMF's substantial performance question (Question 7). The predicate to Question 7 instructed the jury that if it answered "No" to the question that asked the jury to decide if BMF's failure to comply with the Agreement (Question 5) was excused, to answer Question 7.[2] Second, when the jury returned with its verdict, Gulf Coast failed to point out that a fatal conflict existed between the jury's answers to the questions on the breach of contract questions (Questions 2, 3, and 5) and the jury's answer to the substantial performance question (Question 7). Even more,

---

[2]Stated another way, the trial court conditioned the jury's answer to Question 7, the substantial performance question, on a "No" answer to Question 5, the question asking whether BMF's failure to comply with the Agreement was excused.

10

Gulf Coast failed to ask the trial court to instruct the jury further on answering these four issues and to send the jury back to deliberate further on its verdict.

Several weeks later (but after the trial court had discharged the jury) Gulf Coast filed a Motion for JNOV. In the motion, Gulf Coast asked the trial court to disregard the jury's answer to the substantial performance question. In the Motion for JNOV, Gulf Coast argued the jury's answer to the substantial performance question was immaterial. That was so, it argued, because the jury found that BMF breached the contract first, that BMF's breach was material, and that its breach was unexcused. Gulf Coast argued the trial court should consider these as the controlling findings and disregard the jury's other finding inconstant with these findings where the jury found BMF substantially performed its obligations under the parties' Agreement. Additionally, Gulf Coast argued that BMF failed to meet its burden to prove what the reasonable costs were to remedy "the defects due to BMF's errors and omissions." Finally, Gulf Coast's Motion for JNOV asked the trial court to disregard the jury's findings awarding BMF attorney's fees for three reasons: first, according to Gulf Coast, BMF did not prevail on its breach of contract

11

claim; second, according to Gulf Coast, the Agreement allowed Gulf Coast to "cancel and terminate the Agreement, without liability to [Gulf Coast,]" a provision that Gulf Coast interprets as a waiver of BMF's right to recover attorney's fees; and third, Gulf Coast claimed a party cannot collect attorney's fees when recovering on a claim of substantial performance under Texas law.

The trial court denied Gulf Coast's motion and signed a judgment awarding BMF $17,409. The trial court also awarded BMF $15,000 in attorney's fees, plus conditional awards of additional attorney's fees the trial court made contingent on BMF's success if Gulf Coast pursued but then lost in future appeals.[3] After the trial court signed the judgment, Gulf Coast filed a post-judgment motion seeking to modify the judgment the trial court signed. In the post-judgment motion, Gulf Coast argued that a conflict exists between the jury's findings on a cluster of issues that addressed BMF's breach of the Agreement (Questions 2, 3, and 5) and the substantial performance question (Question 7). In its post-judgment

---

[3]While the judgment awards attorney's fees to Gulf Coast, BMF has not challenged that award in the appeal. As to the award of attorney's fees, we express no opinion about whether Gulf Coast was (or was not) entitled to an attorney's fees award.

motion, Gulf Coast noted that "it is factually and legally impossible that [BMF] substantially performed [under the Agreement] given the [jury's] findings on Question Nos. 1-5." In the same motion, Gulf Coast re-urged the arguments that it raised earlier in its Motion for JNOV, claiming BMF was not entitled to recover attorney's fees.

## Analysis

### *Substantial Performance*

In Gulf Coast's first issue, it argues that because the jury found BMF failed to comply with material terms of the Agreement first and that its failure to comply with the Agreement was unexcused, the trial court should have disregarded the jury's finding that BMF substantially performed the Agreement when rendering judgment, which it concludes should have caused the trial court to render judgment in favor of Gulf Coast, not BMF.

While the trial court could have chosen to resolve the conflict in the jury's findings in a manner that favored Gulf Coast, it did not. And Gulf Coast's failure to recognize the conflict between the jury's findings on the issues until after the trial court discharged the jury prevents this Court from correcting the conflict on appeal. Had Gulf Coast brought the

13

conflict in the findings to the trial court's attention promptly when the issue could have been addressed by the jury—meaning before the jury was discharged—the trial court could have given the jury additional instructions to guide its deliberations, and perhaps the jury with the additional instructions could have answered the issues in a way that would have been consistent. Then, the jury could have resolved the conflict as the finder of fact.[4] But since Gulf Coast failed to point the conflict in the findings out when it had an opportunity to correct the problem, its sole remedy now is to prove the record conclusively established that BMF breached a material term of the contract, that BMF breached the contract first, and that BMF's breach was unexcused.

Gulf Coast does raise those arguments in its appeal, noting that under Texas law, "a party to a contract who is himself in default cannot maintain a suit for its breach."[5] But the fact the jury return findings in Gulf Coast favor does not conclusively establish the elements required to

---

[4]*See Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 787-88 (Tex. 2021) ("Because Los Compadres did not object to the jury's allegedly conflicting answers before the trial court discharged the jury, it cannot now complain that the conflicting answers undermine the judgment based on the jury's verdict.").

[5]*Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (per curiam).

14

prove BMF defaulted on its obligations given that the same jury found BMF substantially performed its contractual obligations except for minor variances to Gulf Coast. When the case involves a construction contract, as is the case here, a contractor who hasn't fulfilled the obligations of his contract may still "sue on the contract, but his recovery is decreased by the cost of remedying those defects for which he is responsible."[6] The trial court relied on that theory in rendering the judgment in BMF's favor that Gulf Coast complains about in its appeal.

In part, Gulf Coast argues the findings the jury returned on the cluster of issues tied to BMF's breach of the Agreement (Questions 2, 3, and 5) are in fatal conflict with the jury's answer to the substantial performance question, Question 7. We agree with Gulf Coast that the findings on the cluster of breach of contract issues that favor Gulf Coast and the substantial performance issue that favors BMF fatally conflict. But Gulf Coast failed to point out the conflict promptly before the jury was discharged when it was before the trial court. It's settled that a party's failure to point out a conflict in a jury's findings to the trial court

_____

[6]*Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 482 (Tex. 1984).

15

in a timely manner prevents the party from complaining later "that the conflicting answers undermine the judgment based on the jury's verdict."[7] To the extent Gulf Coast complains that findings the jury returned on the breach of contract issues and the substantial performance issue are in conflict, we hold it waived its complaint by failing to point the problem out to the trial court in a timely manner.

*Legal and Factual Sufficiency*

Although Gulf Coast included some arguments complaining about the insufficiency of the evidence with the arguments it included with its first issue, for convenience we will address all legal and factual sufficiency arguments in discussing Gulf Coast's second issue. We address Gulf Coast's legal sufficiency arguments first since Gulf Coast preserved those arguments by filing a Motion for JNOV.

On appeal, Gulf Coast argues the evidence admitted in the trial conclusively establishes that BMF breached the material terms of the Agreement first and without excuse. We disagree. At trial, Gulf Coast argued BMF breached material terms of the parties' Agreement by failing to bury the conduit to specified depths, failing to provide Gulf Coast with

---

[7]*Valdez*, 622 S.W.3d at 787-88; Tex. R. App. P. 33.1(a).

16

the location of the conduit after burying it, and by failing to keep the buried conduit clear of debris. But we find nothing in the four corners of the Agreement that specifies how deep BMF was to bury the conduit, whether BMF was to keep the conduit free of mud, or whether BMF was to clean the mud from the conduit after inserting it into a hole. And we find no other written documents, such as purchase orders or written authorizations that required it to do so either. And while their possibly might have been specifications like the ones Epps testified about in some of the documents referenced in the Agreement, Epps never identified what document the specifications were in, nor did Gulf Coast's attorneys bother to introduce the written specifications that controlled BMF's work into evidence during the trial.

The Agreement references several documents as "Subcontract Documents" that possibly contained specifications requiring Gulf Coast's subcontractors to bury conduit to specified depths and likely contained a number of other requirements relevant to BMF's work. The Agreement specified the Subcontract Documents "consist of:

(1) this Agreement;
(2) the Prime Contract;
(3) Extra Work Orders generated subsequent to the execution of the Agreement;

17

(4) Purchase Orders as may be generated from time to time; and

(5) Modifications to this subcontract issued after execution of this Agreement."

In legal terms, the Agreement BMF signed with Gulf Coast is integrated only as to the matters the Agreement addressed.[8] That said, the Agreement's terms don't address the depth of the conduit, whether BMF was required to prevent debris from entering the conduit after running the conduit into the horizontally drilled holes, or whether BMF was responsible for paying to clean out the mud from contaminated lines after running the conduit into a hole. And the evidence the parties provided the jury did not include the written work authorizations that Gulf Coast's Agreement contemplated, any purchase orders, or other documents specifying the details like those Epps described when explaining what he expected of BMF. But given the fact the Agreement does not specify the depth of the holes or the details relevant to the issues in dispute together with the failure of the parties to develop a record that includes the documents referenced in the Agreement, we cannot now say

---

[8] *See West v. Quintanilla,* 573 S.W.3d 237, 244 (Tex. 2019) (explaining that although a partially integrated contract is "complete and final as to its subject matter, it does not purport to address or supersede agreements related to other matters").

that Epps' testimony conclusively established BMF's failure to bury the conduit to the depths Epps described, to keep the conduit clean, and to clean the mud out of the conduit were material breaches of the terms of the parties' Agreement as a matter of law.

Next, Gulf Coast argues the evidence is legally insufficient to support the jury's finding that BMF substantially performed its Agreement with Gulf Coast and is legally insufficient to support the jury award of $17,409 in damages based on the jury's finding of substantial performance. The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review."[9] In reviewing for legal sufficiency, we "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not."[10]

Here, there were no objections to the charge over the definitions accompanying the question on substantial performance (Question 7). The instruction tied to Question 7 advised the jury that

> [t]he term *substantial performance*, as used in the charge, means that there has been no willful departure from the terms of the agreement and no omission in essential points

---

[9]*Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010).
[10]*City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005).

19

and that the agreement has been honestly and faithfully performed in its material and substantial particulars and the only variance from the strict and literal performance consists of technical or unimportant omissions or details.

Without an objection to a definition in a charge, we measure the evidence admitted in the trial against the charge and decide whether legally sufficient evidence supports the jury's finding on the issue the appellant is challenging in the appeal.[11]

At trial, the jury heard Lee Winters, BMF's owner, and Earl Epps, Gulf Coast's Director of Operations, address their respective expectations about BMF's work under the Agreement. The Agreement required Gulf Coast to pay BMF a unit price for each linear foot of conduit BMF buried underground. Winters testified that Gulf Coast gave BMF project sheets, sheets in which Gulf Coast designated where the conduit was to be buried. While the project sheets are in evidence, they lack specifications identifying how deep the conduit had to be buried, they do not specify whether BMF is to clean the conduit or to protect its worksite to prevent the conduit from being contaminated with mud, and we find nothing in

_____

[11]*See St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 530 (Tex. 2002).

the project sheets requiring BMF to provide Gulf Coast with as-built drawings after it placed the conduit underground.

When Epps testified, he didn't dispute that BMF buried conduit in the locations specified in the project sheets; instead, he said BMF didn't bury the conduit based on the standards required under the parties' Agreement. But as already noted, the Agreement is not fully integrated—it doesn't specify the depths for the lines, whether BMF had to protect the conduit during its work, or whether BMF was to provide Gulf Coast with as-built drawings after completing its work.

Since the terms Epps claims the parties agreed to are not among the writings in evidence, we must disregard Epps' testimony criticizing BMF's work in reviewing the evidence relevant to the jury's finding that BMF substantially performed its obligations under the Agreement. And when the evidence favoring the jury's finding of substantial performance is viewed in the light that favors the judgment, the finding Gulf Coast seeks to overturn is reasonable given the jury's discretion to determine what the Agreement required BMF to do and what constituted a material breach under a partially integrated contract that involved a project where BMF buried around 10,000 feet of conduit, a small part of which

21

the jury may have decided that BMF failed to bury at a sufficient depth. We overrule Gulf Coast's argument that the evidence is legally insufficient to support the jury's answer to the substantial performance question, Question 7.

Next, we address Gulf Coast's argument that the evidence is legally insufficient to support the jury's award of $17,409 in damages. Generally, juries may decide to award damages within the range of evidence the parties present in the trial when a rational basis exists supporting the jury's award.[12] On appeal, "[t]he evidence need not correspond to the precise amount found by the jury."[13]

The amount the jury awarded falls within the range of evidence the parties presented to the jury during the trial. As a reviewing court, we may not speculate about how the jury arrived at the award.[14] At trial, the parties presented conflicting testimony about what the Agreement required, whether BMF complied with the Agreement's terms, who was

---

[12]*Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 713 (Tex. 2016); *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002).

[13]*Sam Rayburn Mun. Power Agency v. Gillis,* No. 09-16-00339-CV, 2018 Tex. App. LEXIS 5743, at *44-45 (Tex. App.—Beaumont July 26, 2018, pet. denied).

[14]*Id.*

responsible for correcting the work that Gulf Coast criticized after BMF ran the conduit into the holes, and whether what Gulf Coast spent was reasonable for correcting the work Gulf Coast claimed was deficient.

We turn to BMF's evidence first. During the trial, BMF established that Gulf Coast paid $48,357 for work that BMF performed on the fiber-optic project before Gulf Coast began disputing the invoices BMF was submitting to Gulf Coast for its work. Even after Gulf Coast started complaining about deficiencies in BMF's work, Gulf Coast allowed BMF to continue to work on the project. And BMF, based on the work it claimed to have completed on the project, submitted additional invoices to Gulf Coast claiming Gulf Coast owed it another $42,593 for laying another 5,782 feet of conduit at Gulf Coast's request. The $42,593 of unpaid work is reflected in invoice numbers 105-107. Gulf Coast refused to pay BMF for $42,593 of work, but not because BMF did not do the work reflected in those invoices. Instead, Gulf Coast presented evidence in the trial showing it spent $37,377 to correct what it claimed were deficiencies and errors in the work BMF did from the time it started working on the project. While we can't speculate about exactly how the jury arrived at its award, we note the jury's award is substantially less than the $42,593

that BMF billed in the invoices that Gulf Coast didn't pay. And of the $37,377 that Epps claims Gulf Coast spent to correct what he characterized as BMF's nonconforming work, part of the work that accounts for Gulf Coast's $37,377 calculation was completed by Gulf Coast's own employees. As to the work Gulf Coast's employees performed, the jury may have chosen to allocate some or all of the cost of that work to Gulf Coast rather than BMF given the terms of the partially integrated Agreement relevant to the issues in dispute, particularly since the Agreement does not cover all of the disputed issues that the parties asked the jury to consider when resolving the disputed issues in the trial.

In the end, by its verdict the jury struck a balance between the testimony about what the Agreement required and who was responsible for the problems BMF encountered after it signed the subcontract agreement with Gulf Coast.[15] Based on the manner the parties conducted the trial and the evidence the parties introduced, we conclude the record

---

[15] *See Mayberry v. Tex. Dep't of Agric.,* 948 S.W.2d 312, 317 (Tex. App.—Austin 1997, writ denied).

24

contains legally sufficient evidence to support the jury's award of $17,409 in damages.

Last, we turn to Gulf Coast's factual insufficiency arguments. In these, Gulf Coast argues the evidence is factually insufficient to support the jury's substantial performance finding, Question 7, and damages award for substantial performance, Question 8. To preserve factual sufficiency complaints—a complaint that a jury finding is against the great weight of the evidence, or a complaint about the inadequacy or excessiveness of damages—the complaining party must raise its complaint in a motion for new trial.[16] While Gulf Coast did file several motions after the jury returned its verdict, its post-judgment motions all asked the trial court to render judgment in Gulf Coast's favor; none of Gulf Coast's motions complain the evidence is factually insufficient to support the jury's findings. And in these motions, Gulf Coast never asked the trial court to award it a new trial.

We conclude that Gulf Coast failed to preserve its factual sufficiency arguments for the purposes of having them reviewed on appeal. We overrule Gulf Coast's factual insufficiency arguments in

---

[16]*See* Tex. R. Civ. P. 324(b)(2), (3), (4).

issues one and two. And having now addressed all the arguments that Gulf Coast raised in its first two issues, we overrule issues one and two.

*Attorney's Fees*

In Gulf Coast's third issue, it argues that because BMF's recovered on its claim for substantial performance, it had no right to recover against BMF on its claim for attorney's fees. Alternatively, Gulf Coast argues BMF "contracted away its right to recover attorney's fees" in the Agreement.

Whether a party may recover attorney's fees is a legal question, so we review whether attorney's fees are recoverable under a de novo standard.[17] "Texas follows the American rule on attorney's fees, which provides that, generally, a party may not recover attorney's fees unless authorized by statute or contract."[18] And awards of attorney's fees are "limited by the wording of the statute or contract."[19]

A statute provides a right to recover attorney's fees based on the record before us here. Under the Texas Civil Practice and Remedies Code,

---

[17] *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999).

[18] *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019).

[19] *JCB, Inc. v. Horsburgh & Scott Co.*, 597 S.W.3d 481, 491 (Tex. 2019).

the legislature authorized individuals to recover reasonable attorney's fees in addition to the amount of a valid claim and costs when the individual's claim is for, among other things, (1) services rendered, (2) labor performed, (3) materials furnished, or (4) an oral or written contract.[20] To be awarded attorney's fees under that statute, however, the party must prevail on its claim under the statute and recover damages on its claim.[21]

Under the trial court's judgment and on appeal, BMF was the prevailing party under the trial court's judgment on its substantial performance claim. Even though claims for substantial performance presume a quasi-contract theory, BMF's claim is tied to a written contract. And the contract required BMF to perform services, labor and to provide materials to Gulf Coast. Given that Gulf Coast failed to promptly object to the conflict in the jury's findings, it may not now complain of the conflict in the findings. And we hold that the trial court did not abuse its discretion by awarding BMF attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code when, in

---

[20]Tex. Civ. Prac. & Rem. Code Ann. § 38.001(b).
[21]*MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 666 (Tex. 2009).

its discretion, it decided to sign a judgment favoring BMF that made BMF the prevailing party in the suit.[22]

Last, Gulf Coast argues that under the Agreement it signed with Gulf Coast, BMF contracted away its right to recover attorney's fees. Gulf Coast points to section 14.3 of the Agreement to support its argument, a paragraph that explains when Gulf Coast may, at its option, terminate or suspend BMF's work. Section 14.3 of the Agreement gave Gulf Coast the right to stop BMF's work "and take all necessary action to stop cost commitment and protect any property in [BMF's] possession which [Gulf Coast] has or may acquire an interest." The Agreement then states:

> In any event, the total payments set forth above, together with payments made pursuant to this Agreement prior to termination shall not exceed the Contract Amount. In no event shall [Gulf Coast] be liable for the loss of anticipated profits or any special or consequential damages arising from said termination. [BMF's] remedies hereunder shall be subject to the remedies provided by Owner to [Gulf Coast,] as contained in the terms and conditions of the Prime Contract.

---

[22] *See, e.g.*, Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (stating a party who prevails on a breach of contract claim is entitled to attorney's fees); *Weitzul Constr., Inc. v. Outdoor Environs,* 849 S.W.2d 359, 366 (Tex. App.—Dallas 1993, writ denied) (noting that "[a] party may recover attorney's fees for claims arising out of written contracts or quantum meruit").

Once again, we face the same problem we've already addressed—Gulf Coast failed to establish what the Prime Contract says since it failed to introduce the Prime Contract in the trial. Yet Gulf Coast insists the that through the above language, BMF waived its statutory right to recover attorney's fees from Gulf Coast, a statutory right created by section 38.001 of the Texas Civil Practice and Remedies Code.[23]

To be sure, had the Agreement contained language waiving BMF's right to attorney's fees, we would have no quarrel with Gulf Coast's claim that BMF waived its recovery since in Texas a party may "waive statutory rights including constitutional rights."[24] But to establish that a party waived its rights, the record must show the party intentionally surrendered a right through a contract provision before a court will find a provision in a contract operates as a waiver of a statutory right.[25]

---

[23]Tex. Civ. Prac. & Rem. Code Ann. 38.001(b).

[24]*Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 6 (Tex. 2014).

[25]We note that Gulf Coast pled waiver in its answer and in arguing waiver, it argues BMF forfeited its right to recover attorney's fees as a matter of law.

In Texas, waiver is the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right."[26] When deciding whether the provisions in a contract resulted in waiving of a party's right to recover attorney's fees, the Fifth Circuit Court of Appeals in a case interpreting Texas law observed that the contract must "*specifically* preclude [the claimant's] statutory claim to an award of attorney's fees under Section 38.001."[27] The provision that Gulf Coast relies on here doesn't meet that test.

Nothing in this record shows that when BMF signed the Agreement, it intentionally relinquished its statutory rights under section 38.001 to recovery attorney's fees. For example, while the Agreement mentions anticipated profits and consequential damages, Gulf Coast has not argued that recovering attorney's fees under a statute

---

[26]*Shepherd v. Ledford*, 962 S.W.2d 28, 36 (Tex. 1998) (quoting *Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987)).

[27]*Tex. Nat'l Bank v. Sandia Mortg. Corp.*, 872 F.2d 692, 701 (5th Cir. 1989) (interpreting Texas law); *see also Bank of Am., N.A. v. Hubler*, 211 S.W.3d 859, 865 (Tex. App.—Waco 2006, pet. granted, judgm't vacated w.r.m.) (holding that the claimant did not waive her statutory right to attorney's fees because the contract provision that the bank would not be liable "for attorney's fees incurred," was "too general to apprise [the claimant] of what right she [was] relinquishing, namely her statutory right to attorney's fees under Chapter 38").

is a consequential damage or that the parties understood it to be a consequential damage when they entered the Agreement. Because the arguments Gulf Coast relies on to support its third issue lack merit, its third issue is overruled.

## Conclusion

Having overruled Gulf Coast's issues, the trial court's judgment is AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 1, 2021
Opinion Delivered July 28, 2022

Before Golemon, C.J., Kreger and Horton, JJ.